[Civ. No. 25205. First Dist., Div. Four. Mar. 18, 1969.]

WILLIAM CAVORETTO et al., Plaintiffs and Respondents, v. CITY OF RICHMOND et al., Defendants and Appellants.

James P. O'Drain, City Attorney, and John R. Pierce, Deputy City Attorney, for Defendants and Appellants.

Wells & Chesney and Arthur Wells, Jr., for Plaintiffs and Respondents.

DEVINE, P. J.—Plaintiffs, retired firemen who receive pensions from the City of Richmond, brought this action to recover amounts which the city had deducted from their pension payments because of awards which the pensioners received under the Workmen's Compensation Insurance Act of the State of California.

The deductions were made pursuant to article XI, section 17 of the city charter, which provides that anyone who receives a pension and who is also entitled to workmen's compensation shall receive a monthly payment equal only to the monthly pension. The city is insured for workmen's compensation by the State Compensation Insurance Fund. When a pensioner is awarded workmen's compensation, a check is sent by the fund to the finance department of the city, which then sends the check to the pensioner together with the city's check for the balance of the pension sum. If the workmen's compensation amount exceeds the earned pension payment in any month, only the compensation check is sent, and a credit for the excess is taken by the city and is applied in later months.[1]

The sources of the pension fund are contributions from the employees, equal contributions by the city, and awards and gifts made to the fire and police departments and their mem-

---

[1] The city did not take any credit at all against employees (not plaintiffs herein) who made compromises and releases of workmen's compensation claims.

bers. The moneys in the pension fund are kept in the same bank accounts as the general tax moneys collected by the city. More particularly, employee contributions to the pension fund are commingled in the same bank accounts with city contributions to the fund. Since March 1964, the city has maintained separate ledger accounts on its books for revenue received from employee contributions and from city contributions to the fund, but this is merely a bookkeeping device.

Section 3751 of the Labor Code reads: "No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee either directly or indirectly, to cover the whole or any part of the cost of compensation under this division. Violation of this section is a misdemeanor." Respondents contend that the city's practice violates the statute because pension benefits are partly composed of employees' contributions. ■ The trial court agreed, and allowed the city a partial credit only, a credit which bears the same ratio to compensation liability as the city's contribution bears to the total contributions to the pension fund.

In *City of Los Angeles* v. *Industrial Acc. Com.* (*Fraide*) 63 Cal.2d 242 [46 Cal.Rptr. 97, 404 P.2d 801], and in *City of Los Angeles* v. *Industrial Acc. Com.* (*Morse*) 63 Cal.2d 263 [46 Cal.Rptr. 110, 404 P.2d 814], it was held that a city which is a self-insurer of workmen's compensation may not make a deduction of the whole amount of workmen's compensation payments from an employee's benefits under city charter provisions (disability pension in *Fraide*, widow's pension in *Morse*), where the employee has contributed to the pension fund, but only a deduction proportionate to the city's contribution to the pension fund. Labor Code section 3751 simply forbids the use of the earnings of an employee for payment of workmen's compensation. The judge in our case regarded the decisions as controlling.

Appellants contend that the Los Angeles cases apply only when the municipality is its own insurance carrier, as permitted by Labor Code section 3700. Their reasoning is this: A self-insured city is obliged to pay workmen's compensation benefits only from tax dollars, because of section 3751. But Los Angeles attempted to pay its obligations, as *carrier*, from funds which may have included (the trial court was directed to decide upon the facts) employees' contributions. But, say appellants, where a city does not act as carrier, but purchases workmen's compensation insurance, it is not using the

employees' dollars to pay workmen's compensation benefits. It does not pay *any* workmen's compensation awards.

But the premiums were paid from amalgamation of the city's general fund and the pension fund. Thus, the employees did, at least indirectly, contribute to their own workmen's compensation benefits. There had been no segregation of moneys whereby it could be assured that only tax dollars would bring about payment of industrial accident awards.

Whether a municipality attempts to reduce its liability as its own carrier of workmen's compensation insurance, or to reduce its liability to make pension payments, is not important. In *City of Los Angeles* v. *Industrial Acc. Com. (Morse) supra,* it is said: "If the city is lawfully entitled to reduce its workmen's compensation liability to Mrs. Morse [the widow] we see no reason why it may not, as an alternative, reduce its pension liability. In either case, of course, the reduction may not exceed an amount determined by the method of computation outlined in *Fraide.*" (63 Cal.2d at pp. 264-265, fn. 1.)

Appellants argue that whatever moneys are saved by crediting the whole amount of workmen's compensation payments to pension benefits will benefit the member employees by reducing the drain on the fund which is partly attributable to their assessments. But this argument ignores the difference between those employees who are entitled by reason of injury to workmen's compensation and those who are not. The disability which plaintiffs have sustained may bar them from work which other pensioners are able to do. Plaintiffs must not be required to turn over, in effect, their workmen's compensation awards, to the extent that these have been paid for by their own contributions (even though indirectly), for the benefit of either the city or their fellow employees or pensioners.

Finally, appellants propose that even if the rule of the *City of Los Angeles* cases (*Fraide* and *Morse*) be held applicable, the city should be entitled to credit for workmen's compensation benefits not only for the proportion of the city's contribution to the whole of the pension fund, but also for the proportion of the city's obligation to contribute to fund the anticipated deficit in the pension fund. The city points out that the pensioners' rights are vested. (*Kern* v. *City of Long Beach,* 29 Cal.2d 848, 852 [179 P.2d 799].) Although, at the time of trial, the payments to plaintiffs were made from contributions made by and on behalf of employees who have yet to retire, there was a deficit of over 14 million dollars which

was constantly increasing. The city must fund the deficit, else the pension fund must become insolvent not later than 1971. It has been estimated by actuaries that in order to fund the deficit the city will have to contribute about six times the contributions of the employees. So, appellants propose that the city should be entitled to credit not only for what it did contribute to the pension fund but for what it should have contributed during respondents' employment periods if the contributions had been actuarially correct, or that some other means of computation having the same effect be used.

The city concedes that it would be difficult to compute the theoretical contribution. Indeed it would, because to estimate the number of retirements, the ages of employees at time of retirement and their life expectancies, and investment income of the fund, all projected into the future, and then to apply the results of these estimates retroactively to the years of plaintiffs' services, would be an extraordinarily complex task. The working out of the multifold problems would require time, which plaintiffs ought not to be required to give, in order to make up for the city's inadequacies, unless there were compelling authority for the unprecedented scheme.

To the contrary, the authority sustains plaintiffs. In the *City of Los Angeles (Fraide)* case, *supra,* the "city's contributions" are defined as "the aggregate tax monies paid into the pension fund during the years Fraide [the employee] was employed by the city as a policeman and paid into the fund. 'Employee contributions' are the aggregate deductions paid into the fund by all firemen and policemen *during those years.*" (63 Cal.2d at pp. 253-254; italics added.) Later years, therefore, are not to be considered for the supplying of contributions.

Plaintiffs performed all of their services during years before the city commenced funding the deficit. Their rights are not to be altered now.

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.