[S.F. No. 22751. In Bank. May 27, 1971.]

KENNETH I. SYMINGTON, Plaintiff and Respondent, v.
CITY OF ALBANY et al., Defendants and Appellants.

24

## COUNSEL

Lawrence D. Saler, City Attorney, for Defendants and Appellants.

Arthur Bellman for Plaintiff and Respondent.

Ghitterman, Spielman & Steele and Allan S. Ghitterman as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**TOBRINER, J.**—In this case we are called upon to consider whether the trial court properly followed our decision in *City of Los Angeles* v. *Indus-*

*trial Acc. Com. (Fraide)* (1965) 63 Cal.2d 242, 253 [46 Cal.Rptr. 97, 404 P.2d 801], and Labor Code section 3751 in holding that the City of Albany may reduce the pension it pays to retired policemen and firemen who also receive workmen's compensation benefits by an amount proportional to the city's contribution to its pension fund. Labor Code section 3751 provides that "No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation under this division. . . ."[1] In *City of Los Angeles* v. *Industrial Acc. Com. (Fraide)* (1965) 63 Cal.2d 242, 253 [46 Cal.Rptr. 97, 404 P.2d 801], we held that to avoid the violation of section 3751's proscription of employee contributions and to prevent double recovery by the employee the city should receive only a partial credit against workmen's compensation liability by reason of its disability pension payments, and that such credit should be commensurate with the city's contribution to the pension fund.

Plaintiff, a retired fireman, throughout his more than 20 years of service, contributed 6 percent of his earnings to a pension fund to provide for his retirement; the city matched his contributions. The city now seeks to reduce plaintiff's pension by the entire amount of the workmen's compensation benefits otherwise due to him. Thereby the city, in substance, would deprive him of the benefit of his many years of contributions to the pension system and compel him, in violation of Labor Code section 3751, to pay indirectly for his own workmen's compensation benefits. If, however, plaintiff were to receive both the entire amount of his workmen's compensation benefits and the full city pension, he would derive from the single disability a greater recovery than authorized by section 3751 and the pension plan. We shall explain how the trial court properly followed our *Fraide* decision and Labor Code section 3751 to avoid these untoward results and to balance the equities of this case.

### 1. *The facts*

Plaintiff commenced his employment with the City of Albany as a fireman in July 1942. On January 29, 1963, he sustained an injury arising in the course of his employment as a fireman. As a consequence of this injury plaintiff became permanently disabled. During his more than 20 years of service, plaintiff contributed 6 percent of his salary to a city pension fund, and the city paid an equal amount.[2] Because of the pension

---

[1]References hereinafter to section 3751, without mention of any code, are to the quoted section.

[2]Section 50(1) of the Albany City Charter provides in pertinent part: "A sum equal to six per centum (6%) out of and from the total amount of the monthly pay-

rights that had accrued during his employment, the Albany Board of Police and Fire Pension Fund Commissioners (hereinafter pension board) granted plaintiff a service connected pension in the sum of $363.50 per month, effective August 1, 1963.

On February 13, 1964, the Workmen's Compensation Appeals Board (formerly Industrial Accident Commission) awarded plaintiff permanent disability compensation of $52.50 per week beginning August 8, 1963, and continuing for 324 weeks. Thereafter, plaintiff would be entitled to receive $25.44 per week for the remainder of his life.[3] Upon plaintiff's receipt of his workmen's compensation benefits, the pension board undertook to reduce his pension ($363.50 per month) by the entire amount of his workmen's compensation benefits ($210 per month). Hence, commencing with June 1964 the city proposed to pay plaintiff a pension of only $153.50 per month. Since he received $210 per month from the city's workmen's compensation carrier he would thereafter obtain a total payment each month of $363.50.

Plaintiff then filed an action in the Alameda County Superior Court for declaratory relief to determine the legality of the pension board's deduction. He contended that by reducing his pension to the extent of the entire amount of his workmen's compensation benefits the city had violated Labor Code section 3751 in the manner found unlawful in *City of Los Angeles* v. *Industrial Acc. Com. (Fraide)*, *supra*, 63 Cal.2d 242, and *City of Los Angeles* v. *Industrial Acc. Com. (Morse)* (1965) 63 Cal.2d 263 [46 Cal.Rptr. 110, 404 P.2d 814]. The trial court rendered judgment for plaintiff and ruled that the City of Albany should receive only a partial credit against its pension liability and that credit should bear the same ratio to the plaintiff's workmen's compensation payments as the city's contribution to plaintiff's pension bears to the total pension contributions.

The court reasoned that the city and plaintiff equally contributed to the pension fund, and thus the city's contributions bore a ratio of one-half to the sum of all contributions to the fund. The trial court then applied the ratio of one-half to the amount of the workmen's compensation benefits ($210 per month) and concluded that the city could reduce the pension only by an amount equal to half the workmen's compensation benefits

roll of all of the members of both of said Departments for the current month, shall be retained by the City Treasurer, and shall be paid into said Police and Fire Relief and Pension Fund by the City; in addition thereto and out of the General Fund of the City of Albany the City shall contribute an equal amount to said fund monthly."

[3] The workmen's compensation award was subject to a $1,000 lien for attorney's fees. The parties stipulated that the trial court would make no order with respect to the $1,000 in the present litigation.

($105). Hence, the city would pay plaintiff a pension of $258.50 per month; the workmen's compensation carrier would pay $210 per month; and he would receive a total of $468.50 each month.

*2. Labor Code section 3751, Fraide, and Morse forbid the city from reducing the pension payments by the entire amount of the workmen's compensation benefits.*

In *Fraide* we dealt with a fund established by the Los Angeles City Charter to provide pensions for city firemen and policemen, financed in part by these city employees, who contributed 6 percent of their salaries, and in part by city taxes. The city charter authorized a Board of Pension Commissioners to administer the pension fund and provided that if any policeman or fireman were awarded workmen's compensation benefits, any disability pension from the fund would "be construed to be and shall be payments of such compensation." The city paid its pensions and discharged its workmen's compensation liability from the same monies because the city served as its own workmen's compensation carrier. When the Industrial Accident Commission refused to allow the city any credit against its workmen's compensation liability for disability pension payments from the pension fund, the city sought review.

In a unanimous opinion, we held that to avoid transgressing section 3751's prohibition against employee contributions, the city should receive only a partial credit against its workmen's compensation liability for disability pension payments. ■ Rejecting the city's contention that its charter provision entitled it to a full credit against its workmen's compensation liability, we noted that in *Healy* v. *Industrial Acc. Com.* (1953) 41 Cal.2d 118, 122 [258 P.2d 1], we had held that the compensation provisions of the Labor Code prevail when in conflict with city charter provisions. (*City & County of San Francisco* v. *Workmen's Comp. App. Bd.* (1970) 2 Cal.3d 1001, 1010 [88 Cal.Rptr. 371, 472 P.2d 459]; *Pearson* v. *County of Los Angeles* (1957) 49 Cal.2d 523, 535 [319 P.2d 624]; *Wilson* v. *Beville* (1957) 47 Cal.2d 852, 859 [306 P.2d 789]; *Ferris* v. *Industrial Acc. Com.* (1965) 237 Cal.App.2d 427, 434 [46 Cal.Rptr. 913] (hg. den.).)[4] This court pointed out, "If we uphold the city's system

[4]The city's contention to the contrary notwithstanding, *Foster* v. *Pension Board* (1937) 23 Cal.App.2d 550 [73 P.2d 631] does not permit a city charter provision to predominate over Labor Code section 3751. Although it may be true that section 3751's predecessor provision existed at the time that *Foster* was decided, *Foster* neither cited nor considered that provision and *Foster* did not discuss any conflict between the workmen's compensation law and the city charter. To the extent that the later cases of *Healy, Fraide,* and *Morse* conflict with *Foster,* it was overruled by those decisions.

of employee deductions which can be used for disability pensions and permit the city a complete credit against its workmen's compensation liability, we encourage employers to set up hybrid funds composed of employee contributions and other funds for the purpose of discharging compensation liability, even though the employer cannot show that employee contributions are not used for payment of benefits. Such a system would violate the legislative mandate as interpreted by *Healy* and offer a stratagem for the purpose of undermining the system of workmen's compensation long established in this state." (*City of Los Angeles* v. *Industrial Acc. Com.* (*Fraide*), *supra,* 63 Cal.2d 242, 252-253.)

In a companion case of *City of Los Angeles* v. *Industrial Acc. Com.* (*Morse*), *supra,* 63 Cal.2d 263, 264-265 and footnote 1, we indicated expressly that the *Fraide* principle would limit the city's right to reduce the pension of a fireman's widow by the amount of workmen's compensation death benefits: "If the city is lawfully entitled to reduce its workmen's compensation liability to Mrs. Morse we see no reason why it may not, as an alternative, reduce its pension liability. In either case, of course, the reduction may not exceed an amount determined by the method of computation outlined in *Fraide*."

In the present case the City of Albany urges this court to distinguish *Fraide* and *Morse* on six grounds, none of which we find valid:

*First:* The city contends that the evidence does not show that any funds paid for workmen's compensation came from the earnings of an employee in violation of Labor Code section 3751. ▮▮▮ Yet the *Morse* case expressly holds *Fraide* applicable whether a city charter provision reduces pension payments to account for workmen's compensation or seeks to deduct from workmen's compensation those amounts that it has disbursed as pension payments. *Cavoretto* v. *City of Richmond* (1969) 270 Cal.App.2d 726, 729 [76 Cal.Rptr. 94], expressly relied upon *Morse* in concluding that a municipality may not evade *Fraide* by reducing city pension payments instead of workmen's compensation liability.

*Second*: The Albany pension fund constitutes a separate trust account apart from the city's general fund, whereas the Los Angeles pensions were paid from the city's general fund. Although in *Fraide* and *Morse* both workmen's compensation and city pension obligations derived from the same fund to which employees were required to contribute and although in the present case the City of Albany's pension fund reposes in a trust account separate from the city's general fund, this "rather metaphysical" distinction

does not support a different result. (See *City of Los Angeles* v. *Industrial Acc. Com. (Fraide), supra,* 63 Cal.2d 242, 246.)[5]

In *Fraide* we refused to follow the city's suggestion that we deem workmen's compensation payments totally tax supported by reason of the presence of adequate tax monies in the fund, because, we reasoned, "Both employee deductions and tax monies constitute sources for the pension fund. When a disability pension is paid, it in fact consists of money from both sources. Artificially to allocate all the employee deductions to the 'additional' amount and not to the portion which discharges workmen's compensation liability is merely to choose the desired result." (63 Cal.2d at p. 251; fn. omitted.) Our refusal in *Fraide* to follow the city's suggestion was prompted by the fear that we would encourage precisely the evasion that Albany now attempts in setting up "hybrid funds composed of employee contributions and other funds for the purpose of discharging compensation liability, even though the employer cannot show that the employee contributions are not used for payment of *benefits.*" (63 Cal.2d at pp. 252-253; italics added.)

As a practical matter, the city in the present case seeks the same result that Los Angeles sought in *Fraide,* that is, to reduce the employee's effective return on his contributions to the city pension fund solely because he was awarded workmen's compensation, and hence, "directly or indirectly" to charge him for workmen's compensation. By attempting to credit pension payments which result in part from employee contributions against workmen's compensation liability, as in *Fraide, Morse,* and *Healy,* or by attempting to reduce pension payments on account of workmen's compensation benefits, as in *Cavoretto* and the instant case, the employer seeks to reduce the ultimate value of the employee's contributions to the pension fund.

*City of Oakland* v. *Workmen' Comp. App. Bd.* (1968) 259 Cal.App. 2d 163, 169-170 [66 Cal.Rptr. 283] (hg. den.) does not support the city's

---

[5]The city's reliance upon *Lyons* v. *Hoover* (1953) 41 Cal.2d 145, 149 [258 P.2d 4], is entirely misplaced. *Lyons* involved the construction of the Sacramento City Charter as to a pension for a fireman's widow who had also received a workmen's compensation award. The court permitted the city to take credit for the workmen's compensation benefits "against that part of the pension allowance which is provided by contributions of the city." (41 Cal.2d 145, 147.) Clearly, the city could not diminish the widow's pension by an amount greater than that permitted by *Fraide* because of workmen's compensation benefits due her. (*City of Los Angeles* v. *Industrial Acc. Com. (Morse), supra,* 63 Cal.2d 263, 264-265 & fn. 1; see *City etc. of S.F.* v. *Workmen's Comp. App. Bd.* (1969) 269 Cal.App.2d 382, 386-387 [74 Cal.Rptr. 810] (hg. den.).) In fact, *Lyons* expressly states, "Inasmuch as the deductions are to be made from the portion of the pension allowance which is provided by contributions of the city, there is no claim that such deductions could result in charging the employee with part of the cost of workman's compensation in violation of section 3751 of the Labor Code." (*Lyons* v. *Hoover, supra,* 41 Cal.2d 145, 149, fn. 1.)

theory because the Oakland plan provided that the employee would always get *both* the full value of the fund supported by his contribution and the full amount of any workmen's compensation award. Unlike any of the plans in the other cases we have discussed, Oakland segregated employee and employer contributions to its pension fund, stipulated that the employee would receive the full pension to which he had contributed, and reduced only that fund supplied *entirely* by the city's contributions in an amount commensurate with any workmen's compensation benefits reduced in accord with the *Fraide* formula. Hence, the Oakland plan institutionalized the formula adopted by the *Fraide* decision. The Oakland plan makes certain that the value of an employee's contributions to his pension will not be decreased by virtue of any possible workmen's compensation benefits. In contrast, the Albany plan would deduct the entire workmen's compensation from the pension, to which both the employee and the city had contributed, in such a way as to diminish the full pension value of the employee's contribution.

*Third*: The city attaches great significance to the language of the Los Angeles Charter provision, considered in *Fraide*, that any payments "be construed to be and shall be payment of such workmen's compensation"[6] and purports to find no similar language in the Albany Charter. The Albany Charter does, however, indicate that payments shall be computed "to the end that said members of the Police and Fire Department shall receive an aggregate total of benefits paid for by the City of Albany and not included in this law."[7] The "benefits paid for by the City of Albany and not included

---

[6]Section 182½ of the Los Angeles City Charter provides in pertinent part: "[A]ny payments made pursuant to the provisions of this article to such member or to such widow, child or children, dependent parent or parents or other person, shall be construed to be and shall be payments of such compensation or award under such general law, and any payments made under the provisions of this article shall be first applied to payment of such compensation or award and any balance of such payments made pursuant to the provisions of this article shall be deemed to be pension payments; and it is hereby provided that the pension provided for in this article for such member or such widow, child or children, dependent parent or parents, or such other person in case of any such award under such general law, shall be reduced in amount to the difference between the amount of pension provided for in this article, and the total amount of such compensation or award granted and paid under such general law until the total amount awarded under such general law shall have been fully paid."

[7]Section 50(n) of the Albany City Charter reads in full as follows: "Any and all benefits payable under the provisions of this law shall not be additional to and supplemental to any compensation insurance or other insurance covering the scope of this law for the benefit of members of the Police or Fire Department and paid for by the City of Albany from sources other than under this law, but the benefits of said such compensation or other insurance paid for by the City of Albany shall first be deducted from benefits payable under the provisions of this law to the end that said members of the Police or Fire Department shall receive an aggregate total of benefits paid for by the City of Albany and not included in this law, and the benefits provided for under this law, not to exceed in total the highest amounts or sums provided under the provisions of this law."

in this law" constitute in fact "payment of such workmen's compensation." The charter provisions are thus indistinguishable for any purpose here relevant.

*Fourth*: Albany attempts to distinguish cities which are self-insured, such as Los Angeles in the *Fraide* case, from cities which are insured by the State Compensation Insurance Fund, such as Albany itself in the present case. The practical effect of Albany's decrease of its pension payments by the entire amount of the fireman's workmen's compensation award is to diminish the value of his contributions to his pension and thus "indirectly" to compel the employee to pay for his workmen's compensation benefits. We see no reason for any distinction between section 3751's application to those employers who are permissibly self-insured and to those who are institutionally insured. (See Lab. Code, § 3700; see *Cavoretto* v. *City of Richmond, supra,* 270 Cal.App.2d 726, 728-729.)

*Fifth*: The city contends that the application of *Fraide* would result in double liability for the city. To the contrary, *Fraide* as applied in this case *prevents* "double liability" for the city, while retaining the legislative objectives of section 3751. (Cf. *City of Oakland* v. *Workmen's Comp. App. Bd.* (1969) 271 Cal.App.2d 555, 556 [76 Cal.Rptr. 886] (hg. den.).) The *Fraide* rule recognizes that the city has substantially contributed to the pension fund and the employee should not garner both the benefits of the workmen's compensation insurance for which the city has paid *and* the city's portion of the pension fund. Hence, *Fraide* permits the city to decrease its pension payments by an amount commensurate with its contributions to the penson fund because of a fireman's compensation award. (See *City of Los Angeles* v. *Industrial Acc. Com. (Fraide), supra,* 63 Cal.2d 242, 252-253; cf. *Helfend* v. *Southern Cal. Rapid Transit Dist.* (1970) 2 Cal. 3d 1, 10 [84 Cal.Rptr. 173, 465 P.2d 61].)

*Sixth*: Although the city correctly contends that the pension provisions compose an integral part of the employment contract (see *Kern* v. *City of Long Beach* (1947) 29 Cal.2d 848, 852 [179 P.2d 799]; *Dryden* v. *Board of Pension Commrs.* (1936) 6 Cal.2d 575, 579 [59 P.2d 104]), the city erroneously argues that the contract binds the employee to accept the city's disputed reduction in the pension. The contract, however, does not endow the city with the power to abrogate Labor Code section 3751. The section prohibits the employer from exacting "from any employee any contribution . . . either directly or indirectly, to cover the whole or any part of the cost of [workmen's] compensation. . . ." The City of Albany may no more condition employment upon the fireman's or policeman's contribution to the cost of his workmen's compensation than could the City of Los Angeles in *Fraide.* Since the city charter, and thus

the contract of employment, expressly provide for a credit against pension payments by reason of workmen's compensation benefits, the city may, however, claim a partial credit according to the formula established by *Fraide*. ▮ In any event, in order to take even a partial credit the city must put the employee on notice by means of the contract of employment or charter that his pension payments will not be independent of his workmen's compensation benefits for permanent disability. Neither the city nor the Workmen's Compensation Appeals Board could allow any credit if the contract of employment fails so to provide. (See *City of Oakland* v. *Workmen's Comp. App. Bd., supra,* 259 Cal.App.2d 163, 168; cf. Lab. Code, § 4909; *Herrera* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254, 257 [78 Cal.Rptr. 497, 455 P.2d 425] (temporary disability).)

▮ Finally, the city suggests that even if the *Fraide* decision is controlling in the present case, the city in addition to the credit it receives for its contribution to the city penson fund, should be credited for the premiums for workmen's compensation that it pays to the State Compensation Insurance Fund. For the reasons stated herein we reject this suggestion. *Fraide* defines the "city's contributions" as "the aggregate tax monies paid into the pension fund during the years Fraide was employed by the city as a policeman and paid into the fund. 'Employee contributions' are the aggregate deductions paid into the fund by all firemen and policemen during those years." (*City of Los Angeles* v. *Industrial Acc. Com., supra,* 63 Cal. 2d 242, 253-254; *Cavoretto* v. *City of Richmond, supra,* 270 Cal.App. 2d 726, 730.) Hence, the *Fraide* formula did not give the city any credit for premiums paid for workmen's compensation; Labor Code section 3751 as interpreted by *Fraide* does not warrant such a step.

▮ In conclusion, we note that we deal here with a relationship that begins as that of employee and employer but which now has matured into that of pensioner and administrator. In the vast development of pensions in today's complex society, the numbers of pension funds and pensioners have multiplied, and most employees, upon retirement, now become entitled to pensions earned by years of service. We believe that courts must be vigilant in protecting the rights of the pensioner against powerful and distant administrators; the relationhip should be one in which the administrator exercises toward the pensioner a fiduciary duty of good faith and fair dealing.

The trial court in the instant case reaches an equitable result consonant with the above principle; it followed the legislative mandate of Labor Code section 3751 as articulated by *Fraide* and *Morse* to resolve the present cause "upon the basis of the exact equities of the contending parties." (*City*

*of Los Angeles* v. *Industrial Acc. Com. (Fraide), supra,* 63, Cal.2d 242, 254.) Refusing to ignore the employee's contributions to the pension fund and the rights so earned, the trial court correlatively allowed to the city a partial credit against its pension liability because of the fireman's receipt of workmen's compensation benefits. The rights of the pensioner were thereby respected and those of the city equitably adjusted.

The judgment is affirmed.

Wright, C. J., McComb, J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.