*576
 
 Opinion
 

 FLEMING, Acting P. J.
 

 Plaintiffs, retired employees of Meletron Corporation (Meletron), and its successor, the Meletron Division of DeLaval Turbine, Inc. (DeLaval), the latter a subsidiary of Transamerica Corporation, brought this action for declaratory relief against defendants, the trustees of the International Association of Machinists Labor-Management Pension Fund (pension fund), for wrongful termination of plaintiffs’ pension benefits. The trial court upheld the termination of benefits, and plaintiffs appeal, asserting that the trustees acted arbitrarily, capriciously, and unreasonably, in violation of their fiduciary duty to plaintiffs.
 

 Facts
 

 The pension fund, created pursuant to section 302(c) of the Labor Management Relations Act (29 U.S.C. § 186(c)(5)), began to receive contributions from Meletron on 1 July 1967 to provide retirement benefits for employee members of the International Association of Machinists Union (the Union) and for certain nonunion employees. Meletron was obligated to contribute 10 cents to the pension fund for each hour worked by covered employees, and if Meletron continued pension contributions for 48 months, employees who met all vesting requirements would be allowed to collect full pension benefits. If Meletron’s obligation to contribute to the pension fund ended before 48 months, the trustees of the pension fund could terminate or reduce employee pension benefits.
 
 [1]
 
 Under the pension fund document the trustees were vested with full discretion to interpret the pension plan and determine pension eligibility and amounts.
 

 
 *577
 
 On 4 September 1970 Meletron transferred its assets to DeLaval, 38 months after its pension-plan contributions began. The transfer had no effect on the location, working conditions, and tasks of the Meletron employees—who became employees of the Meletron Division of DeLaval. The Meletron/DeLaval transfer agreement specifically declared that DeLaval was not the successor to Meletron and that the transfer was contingent on the pension fund trustees accepting DeLaval “. . . as a new contributing employer . . . without any obligation to contribute thereto for any special class [i.e. non-union] of employees.” As an integral part of the transfer, DeLaval entered a new, separate, collective bargaining agreement with the Union. The new agreement was substantially similar to the Union’s previous agreement with Meletron and expressly provided: DeLaval would recognize all seniority and accrued fringe benefits under previous collective bargaining agreements; DeLaval would increase pension fund contributions from 10 to 15 cents an hour; Meletron’s contract with the Union was nonassignable; DeLaval assumed no obligation from Meletron’s previous agreement, and the “special class” (nonunion) Meletron employees, would be excluded from the pension fund. On 2 September 1970 the pension fund accepted DeLaval as a contributing employer. On 14 April 1971 the trustees of the pension fund applied the 48-month short-term contribution provision to deny pension benefits to the terminated “special class” (nonunion) employees.
 

 On 29 February 1972 DeLaval closed its Meletron facility and ceased pension fund payments after 17 months of uninterrupted contributions. Prior to the Meletron asset transfer, plaintiffs Lix, Lytton, and Wallace had retired and begun to receive pension benefits. The remaining plaintiffs were last employed by DeLaval at its Meletron division. All plaintiffs except Leavitt had retired and were receiving pension benefits prior to 29 February 1972. All plaintiffs had been members of the Union.
 

 On 12 October 1972 the defendant-trustees declared that DeLaval was a new, separate contributing employer which had failed to contribute to the pension fund for 48 months, and then invoked the short-term contribution provision to terminate pension benefits to plaintiff-pensioners when all contributed funds should have been paid out. By letter dated 11 December 1972 defendant-trustees notified plaintiff Leavitt he would be denied pension benefits
 
 [2]
 
 and notified the remaining plaintiffs their pension benefits would terminate in October 1975.
 

 
 *578
 
 At trial plaintiffs contended that for purposes of the minimum period of employer contributions DeLaval was the successor to Meletron; that when the contribution periods of Meletron (38 months) and DeLaval (17 months) were added together, they constituted a continuous, unbroken contribution period of 55 months, sufficient to preclude the denial of benefits under the short-term employer provision penalizing employment for less than 48 months duration.
 

 Defendant-trustees claimed the nonsuccessor provisions of the transfer agreement, the new collective bargaining agreement, and the trustees’ acceptance in September 1970 of DeLaval as a new contributing employer, created a break in employer contributions which justified application of the short-term contribution provision in that neither Meletron nor DeLaval, individually, had contributed to the pension fund for a 48-month period.
 

 The trial court, finding no ambiguity in the pension plan and no breach of duty by the trustees in terminating benefits, entered judgment in defendants’ favor.
 

 Discussion
 

 Pension plans create a contractual relationship between employer and employee under which the employer contributes retirement benefits to induce continued faithful service by the employee.
 
 (Taylor
 
 v.
 
 General Tel Co. of Cal.
 
 (1971) 20 Cal.App.3d 70, 74 [97 Cal.Rptr. 349];
 
 Hunter
 
 v.
 
 Sparling
 
 (1948) 87 Cal.App.2d 711, 722-723 [197 P.2d 807]; 60 Am.Jur.2d Pensions, § 74, pp. 950-952.) They also create a trust relationship between pensioners-beneficiaries and the trustees of pension funds who administer retirement benefits. The trustees must exercise their fiduciary trust in good faith and must deal fairly with the pensioner-beneficiaries.
 
 (Symington
 
 v.
 
 City of Albany
 
 (1971) 5 Cal.3d 23, 33 [95 Cal.Rptr. 206, 485 P.2d 270].) Where, as here, the pension fund trustees are granted vast discretionary powers to interpret the pension document and administer the pension fund, the scope of court review of the trustees’ actions is limited to determination whether a particular interpretation by the trustees is unreasonable, arbitrary, capricious, or has been made in bad faith.
 
 (French
 
 v.
 
 Construction Laborers Pension Trust
 
 (1975) 44 Cal.App.3d 479, 491 [118 Cal.Rptr. 731]; Civ. Code, § 2269;
 
 Giler
 
 v.
 
 Board of Trustees of Sheet Metal Workers of So. Cal.
 
 (9th Cir. 1975) 509 F.2d 848, 849;
 
 Pete
 
 v.
 
 United Mine Wkrs. of Am. Welf. & R. F. of 1950
 
 (D.C. Cir. 1975) 517 F.2d 1275, 1283;
 
 Beam
 
 v.
 
 International Org. of
 
 
 *579
 

 Masters, M. & P.
 
 (2d Cir. 1975) 511 F.2d 975, 979-980; 48 Am.Jur.2d (1977 Supp.) § 221.5; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 73, p. 5432.) State law provides the basis for court review of the decisions and actions of pension-fund trustees, even though pension funds are created pursuant to federal statute, (29 U.S.C. § 186(c)(5)). Federal law is controlling only with respect to the question, not presented here, whether a pension fund is for the “. . . sole and exclusive benefit of the employees of [the] employer . . . .” (29 U.S.C. § 186(c)(5);
 
 Arroyo
 
 v.
 
 United States
 
 (1959) 359 U.S. 419, 427 [3 L.Ed.2d 915, 920-921, 79 S.Ct. 864]; cf.,
 
 Snider
 
 v.
 
 All State Administrators, Inc.
 
 (5th Cir. 1973) 481 F.2d 387, 390;
 
 Bowers
 
 v.
 
 Ulpiano Casal, Inc.
 
 (1st Cir. 1968) 393 F.2d 421, 424.)
 

 1. Viewed in the light of the trustees’ prior interpretation of the pension plan, we find their present interpretation unreasonable. Where parties to a contract have been inconsistent in their interpretation of the contract, the court must select an interpretation of its own. An appellate court is not bound by the interpretation made by the trial court but may make its own independent determination of the contract’s meaning.
 
 (Parsons
 
 v.
 
 Bristol Development Co.
 
 (1965) 62 Cal.2d 861, 866 [44 Cal.Rptr. 767, 402 P.2d 839].) In the process great weight is given to the contemporaneous construction of ’the contract by the parties themselves prior to the time controversy over its meaning arose.
 
 (Warner Construction Corp.
 
 v.
 
 City of Los Angeles
 
 (1970) 2 Cal.3d 285, 296-297 [85 Cal.Rptr. 444, 466 P.2d 996];
 
 Crestview Cemetery Association
 
 v.
 
 Dieden
 
 (1960) 54 Cal.2d 744, 754 [8 Cal.Rptr. 427, 356 P.2d 171]; 1 Witkin, Summary of Cal. Law (8th ed. 1973) Contracts, § 527, p. 449.) At bench, the pension document did not expressly indicate whether or not a successor to the original contributing employer would become a new contributing employer for purposes of the short-term contribution provision. DeLaval sought and received trustee permission to stop making contributions for “special class” (nonunion) employees, the stated reason being to insure that DeLaval would not have a continuing liability to contribute on behalf of nonunion employees. The trustees voted to accept DeLaval as a contributor for union employees only and applied the short-term contribution provision to withdraw accrued benefits from “special class” (nonunion) employees.
 

 Not until two years later on 12 October 1972, subsequent to the time DeLaval stopped making contributions for its Meletron Division, did the trustees retroactively purport to determine that DeLaval was a new contributing employer for union employees for purposes of the short-
 
 *580
 
 term contribution provision as of the date of transfer in September 1970. The minutes of this meeting state:
 

 “The trustees, at their September 1970 meeting, agreed to permit the Special Class unit to withdraw;
 
 to consider Meletron a Short Term Contributing Employer for the Special Class unit only,
 
 and to accept Meletron Division—DeLaval Turbine, Inc., as a contributing employer for the [union] bargaining unit absorbed by them with a new Contribution Date.” (Italics added.) Clearly, the trustees did not consider Meletron a “Short Term Contributing Employer” for union employees on 4 September 1970 when DeLaval purchased Meletron’s assets. This is borne out by the fact that three plaintiffs were already retired and receiving benefits
 
 prior
 
 to the transfer. If in 1970 Meletron were indeed considered by the parties as a “Short Term Contributing Employer” with respect to union employees, those three pensioners would have been classified
 
 at the time of transfer
 
 in the same fashion that the “special class” (nonunion) employees had been classified.
 

 But nothing of the sort happened. The trustees took no action to review pension benefits for union employees until October 1972, when DeLaval closed its Meletron facility and stopped making pension contributions. Only then did the trustees adopt a motion “deeming the Meletron Division of DeLaval Turbine, Inc. a new Contributing Employer as of September 1, 1970.” In effect, this was locking the bam door after the horse had got out. Since the trustees did not interpret the contract at the time of transfer-in 1970 as making DeLaval a new contributing employer for union employees, we think it unreasonable for them to construe the contract differently at a later date.
 

 2. We also think the trustees are estopped by their conduct from terminating benefits to plaintiffs.
 

 Equitable estoppel precludes the termination of pension fund benefits when four requirements are met: (1) the party to be estopped knows the facts, (2) he intends his conduct to be relied upon, (3) the other party is ignorant of the facts, and (4) the other party has relied upon the conduct to his injury.
 
 (Driscoll
 
 v.
 
 City of Los Angeles
 
 (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) The party estopped need not have acted with fraudulent intent, for negligence or silence in the face of a duty to speak may suffice.
 
 (Crestline Mobile Homes Mfg. Co.
 
 v.
 
 Pacific Finance Corp.
 
 (1960) 54 Cal.2d 773, 778-779 [8 Cal.Rptr. 448, 356 P.2d 192]; 7
 
 *581
 
 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 134, pp. 5353-5354.)
 

 At all times the trustees had a fiduciary relationship to the retired pensioners and contributing employees of Meletron.
 
 (Symington
 
 v.
 
 City of Albany
 
 (1971) 5 Cal.3d 23 [95 Cal.Rptr. 206, 485 P.2d 270].) If in 1970 the trustees had concluded that the transfer of assets from Meletron to DeLaval would create a break in employer contributions under the pension plan, their fiduciary duty as trustees would have required them to give written notice to vested pensioners and continuing employees of Meletron of the consequences of such a “nonsuccessor” transfer prior to the trustees’ acceptance of DeLaval as a contributing employer.
 
 (Zottarelli
 
 v.
 
 Pacific States Savings & Loan Co.
 
 (1949) 94 Cal.App.2d 480, 488-489 [211 P.2d 23]; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Trusts, § 57, pp. 5419-5420; Rest.2d Trusts, § 173, com. d;
 
 Kosty
 
 v.
 
 Lewis
 
 (D.C. Cir. 1963) 319 F.2d 744, 748-749.) Such notice was given to the “special class” (nonunion) employees of Meletron, who were notified in September 1970 prior to the transfer that they would no longer be eligible for benefits from the pension fund. No such notice was given to Meletron’s union employees and pensioners of the consequences of the “non-successor” transfer of assets from Meletron to DeLaval. Thus Meletron employees and pensioners remained unaware of the effect of the proposed transfer on their pension rights, and the employees continued to work under a virtually identical collective bargaining agreement. We think the trustees, by virtue of their fiduciary position, came under an affirmative duty to notify plaintiffs and other Meletron employees of any adverse consequences of the transfer of assets from one corporation to another prior to their acceptance of DeLaval as a “new” contributing employer. Their failure to do so at the time estops them from terminating pension benefits now.
 

 For both these reasons, i.e., contemporaneous interpretation of the pension agreement and estoppel, we hold that defendant-trustees acted arbitrarily and capriciously in denying plaintiff Leavitt’s pension benefits and in terminating the pension benefits of the remaining plaintiffs. The judgment is reversed, and the cause is remanded to the trial court with directions to enter judgment for plaintiffs.
 

 Compton, J., and Beach, J., concurred.
 

 A petition for a rehearing was denied August 1, 1978.
 

 [1]
 

 Article IX—Termination of Participation, Section 3, Short Term Contributing Employers:
 

 “In the event that a Contributing Employer ceases to be obligated to make contributions to the fund at any time during the period ending 48 months after its Contribution Date, or in the event that during such period the number of covered Employees employed by the Contributing Employer at any time shall be less than 50 percent of the number of Covered Employees employed by the Contributing Employer on its Contribution Date, the Trustees shall have the right to:
 

 “a. terminate or reduce pensions thereafter payable to Pensioners who formerly were employed by the said Contributing Employer if the total amount contributed by the said Contributing Employer, less benefit payments already made, is less than the actuarially determined value of the pension benefits thereafter payable with respect to such Pensioners;. . .”
 

 [2]
 

 Leavitt had applied for benefits based on disability but had never received payments.