[L.A. No. 32166. Sept. 14, 1987.]

JOSEPH C. THOMPSON, Plaintiff and Appellant, v.
CITY OF SAN DIEGO et al., Defendants and Respondents.

**COUNSEL**

Daniel J. Sullivan, Patrick J. Thistle and Thistle & Krinsky for Plaintiff and Appellant.

John W. Witt, City Attorney, Ronald L. Johnson, Senior Chief Deputy City Attorney, Eugene P. Gordon, Chief Deputy City Attorney, and Thomas F. Calverley, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

**ARGUELLES, J.**—In this case, plaintiff, a police officer recruit who was *injured in the course of his employment before completing his academy*

training, contends, inter alia, that defendant city erred in rejecting his application for a disability retirement pension without affording him a hearing on the application. Although the city defends its denial of a hearing on the ground that plaintiff's application reveals on its face that plaintiff is ineligible for disability retirement under the applicable local ordinance, we believe the city's contention rests on an unduly restrictive interpretation of the informal responses which plaintiff provided on the city's brief retirement application form. Particularly in view of other information concerning plaintiff's physical and mental condition of which the city was aware at the time the retirement application was filed, we conclude that the city should have held a hearing on the application and that plaintiff is entitled to an order compelling the city to afford him such a hearing. Because we do not know what the hearing will reveal, we express no view on the merits of plaintiff's claim for disability retirement benefits.

## I

On January 7, 1980, plaintiff Joseph Thompson began employment with the City of San Diego as a police officer recruit. Two weeks later, on January 21, 1980, plaintiff ran into a concrete bus stop bench while participating in a running exercise at the police academy and injured both of his knees.

As a result of the injury, which the city acknowledges arose out of and in the course of plaintiff's employment, plaintiff was initially off work for two weeks. On his return, he resumed training at the police academy. His knee injuries continued to interfere with his training activities, however, and plaintiff was assigned to clerical work at a police station with the expectation that he would recover from his knee injuries and re-enter the police academy with the next class.

Plaintiff's right knee improved; his left knee did not. In April 1980, Dr. Richard Greenfield, an orthopedic surgeon, performed arthroscopic surgery on the knee. Over the next few months, plaintiff underwent physical therapy and obtained further medical treatment and evaluations from a series of orthopedic specialists.

Throughout this period, plaintiff continued to perform clerical work for the police department. In early October 1980, his supervisors notified him that a new police academy class was scheduled to begin in November, and informed him that he would be medically evaluated to determine if he was physically capable of completing training. At the department's request, Dr.

Greenfield conducted a medical examination of plaintiff on October 14, 1980, and concluded that he was capable of participating in the academy training program. Dr. Greenfield accordingly released plaintiff for the academy training. On November 4, 1980, plaintiff's supervisors ordered him to report to the academy on November 7 to resume training and warned him that if he did not return to full duty as ordered he would face immediate termination from the police department.

Dr. Greenfield's opinion of plaintiff's physical condition and ability to undergo the rigorous physical training program at the academy apparently conflicted with that of Dr. Haddon A. Peck, an orthopedic surgeon who had begun treating plaintiff's knee condition in May 1980. According to a medical report submitted to the trial court, Dr. Peck concluded from an examination of plaintiff on November 4, 1980, that the condition of plaintiff's knee had not improved, that he should avoid repetitive bending, stooping, squatting or turning, and that running under stress conditions would be difficult for him. While Dr. Peck noted the possibility that plaintiff might be rehabilitated to full work capacity through further surgery, he cautioned that the prognosis for such improvement was "guarded."

Although plaintiff's supervisors were notified of Dr. Peck's medical conclusions, they allegedly continued to insist that plaintiff participate in academy training. On November 6, 1980, the day before he was due to report back to the police academy, plaintiff—allegedly despondent over (1) Dr. Peck's prognosis that he might never be able to fulfill his life-long ambition to become a police officer, and (2) his fear that immediate participation in academy training, on which his supervisors were insisting, would increase his disability—returned home and attempted to commit suicide. The attempt was unsuccessful, but thereafter plaintiff's psychological condition prevented him from returning to work at the department in even a clerical capacity.

In September 1981, while on leave without pay from the city, plaintiff applied for disability retirement under section 24.0501 of the San Diego Municipal Code. That section provides in relevant part: "Any member [of the City Employees' Retirement System] . . . permanently incapacitated from the performance of duty as the result of injury . . . arising out of or in the course of his employment, shall be retired for disability . . ., regardless of age or amount of service . . . ."[1] On the application form, plaintiff

---

[1] Section 24.0501 provides in full: "Any member, including a safety member, permanently incapacitated from the performance of duty as the result of injury or disease arising out of or in the course of his employment, shall be retired for disability with retirement allowance, regardless of age or amount of service. Any member, including a safety member, permanently incapacitated from any other cause shall be retired regardless of age but with a retirement al-

described the nature of his disability as "injury to both knees and anxiety," and stated, as the cause of his disability, that he had "injured both knees in training exercises in January 21, 1980, resulting in need for orthopedic and psychiatric care."

At the time plaintiff began working for the city in January 1980, city employees of plaintiff's classification were required to join the city retirement system six months after they began employment, but were also given the option of becoming members of the retirement system at the time of their initial hiring. (§ 24.0105.)[2] Plaintiff had not joined the retirement system when he began his employment, but became a member of the system on July 11, 1980, under the city's six-month automatic-membership policy.

The question of plaintiff's eligibility for disability retirement had apparently come up well before he submitted his formal application in September 1981. On October 31, 1980, one week before plaintiff was ordered back to the academy, the city retirement board requested advice from the city attorney on plaintiff's eligibility for disability retirement. On November 28, 1980, three weeks after plaintiff's failed suicide attempt, a deputy city attorney advised the board that, in his view, plaintiff was not eligible for disability retirement under the applicable municipal ordinance because plaintiff had not been a member of the city retirement system at the time of his initial injury. When plaintiff submitted his formal application for disability retirement in September 1981, the retirement board, relying on the deputy city attorney's advice, rejected plaintiff's retirement application without a hearing because the application indicated that plaintiff's knee injury had occurred before he became a member of the retirement system.

Plaintiff then filed the present action, seeking a writ of mandate to compel the retirement board to afford him a hearing on his application for disability retirement. Although plaintiff acknowledged that his original injury occurred before he became a member of the retirement system, he maintained that his permanent disability—which he attributed both to his physical injury and his psychological condition—did not arise until after he had become a member of the system, and that under a proper interpretation of the applicable ordinance he was entitled to disability retirement in this

---

lowance only after ten years of service. [¶] The Board of Administration shall prescribe rules and regulations setting forth the procedure for the retirement of a member or safety member for disability."

Unless otherwise noted, all section references are to the San Diego Municipal Code.

[2] The city later adopted a new retirement program applicable to employees hired after September 3, 1982, under which most new employees are precluded from joining the retirement system until they have been employed for an entire year. (§ 24.1102.) Safety members, such as members of the police department, automatically join the system upon the completion of academy training. (*Ibid.*)

situation. He sought an order directing the board to hold a hearing to consider evidence on the question of when his permanent disability arose.[3]

The trial court denied the requested writ. The Court of Appeal, in a divided decision, affirmed, concluding that the city attorney had properly interpreted section 24.0501 as precluding disability retirement whenever an employee's initial injury predated his membership in the retirement system. In light of that interpretation, the Court of Appeal found that no administrative hearing was required in this case.

## II

█ Plaintiff contends that the city violated his due process rights in denying his pension application without affording him a hearing. Although the relevant city ordinance, by its terms, provides simply that the retirement board may "in its discretion" hold a hearing to determine any question presented to it (§ 24.0908), the city acknowledges that under governing judicial precedents it is required to afford a pension applicant a hearing whenever entitlement to a pension turns on a disputed question of fact. (See, e.g., *Dickey* v. *Retirement Board* (1976) 16 Cal.3d 745, 748-749 [129 Cal.Rptr. 289, 548 P.2d 689]; *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194, 206-207 [124 Cal.Rptr. 14, 539 P.2d 774].) The city defends its action in denying plaintiff's application without a hearing in this case on the ground that the facts disclosed by the application—that plaintiff's knee injury occurred before he became a member of the retirement system—demonstrated, as a matter of law, that plaintiff was not eligible for the requested disability retirement, and consequently a hearing would have served no purpose.

Plaintiff challenges the city's position on two separate grounds. First, he asserts that, in addition to his knee injury, his disability resulted from a work-related psychological injury, and he was entitled to a hearing to determine when that psychological condition arose and became permanently disabling. Second, he contests the city's interpretation of the applicable ordinance, maintaining that the provision authorizes an employee to obtain disability retirement if he is a member of the retirement system when he becomes permanently incapacitated, regardless of when his initial injury occurred. Because nothing in plaintiff's application indicated that he had become permanently incapacitated as a result of his knee injury prior to the time he became a member of the retirement system, he contends the city was obligated to hold a hearing to determine that factual question.

---

[3] Although plaintiff's complaint alternatively sought an order directing the retirement board to actually award him a disability retirement, plaintiff now acknowledges that he is entitled at most to an order directing the retirement board to hold a hearing on his application.

With respect to plaintiff's first contention, the city acknowledges that plaintiff's claim of a psychological injury would require a hearing, but argues that because his pension application did not identify his psychological condition as a separate injury or disability independent of his knee injury, he cannot now fault the board for failing to hold a hearing on that point. With respect to plaintiff's second contention, the city concedes that if plaintiff's interpretation of the applicable ordinance is correct, factual questions relating to the date of his incapacitation would be presented that would require a hearing. It continues to insist, however, that its interpretation of the ordinance, not plaintiff's, is correct.

We cannot agree with the city that it could properly dispense with a hearing on plaintiff's application. The record in this case makes it clear that in the months following plaintiff's suicide attempt and leading up to his pension application, the city was kept fully apprised of plaintiff's physical and psychological condition. He was under a psychiatrist's care and had applied for industrial/injury leave. Indeed, plaintiff's medical records and the reports of the treating psychiatrist were reviewed by a psychiatric specialist at the city's request. Although plaintiff's pension application did not expressly identify his psychological injury as a cause of his disability separate and distinct from the physical injury to his knees, the form provided by the city allowed only minimal space for a statement of the many potentially interacting causes of a disability, and did not advise applicants that, as apparently proved to be the case here, the sufficiency of the application would be judged under strict standards more commonly applied to legal pleadings. ▮▬▬▮ ▮ Under the circumstances, we believe the city was sufficiently placed on notice of a separate psychological basis for plaintiff's disability retirement claim which may have arisen after he became a member of the retirement system so that a hearing on his application was required even under the city's interpretation of the ordinance.[4] Accordingly, we conclude that plaintiff is entitled to an order directing the city to afford him a hearing on his application.

---

[4] In an admirable display of candor, counsel for the city acknowledged at oral argument that "if [plaintiff] would have amended his application and put 'I received a psychiatric injury on November 4th, 1980, when I left work,' yes, the retirement board would have had to hear that." In light of the city's knowledge of plaintiff's circumstances at the time the application was filed, we can see little significant difference between the language suggested by counsel and the language plaintiff in fact employed in his application. In any event, even if the application was somewhat uncertain in this respect, plaintiff could easily have cured any deficiency had the city promptly communicated its concerns to him. In view of the fiduciary relationship between the retirement board and plaintiff (see, e.g., *Hittle* v. *Santa Barbara County Employees Retirement Assn.* (1985) 39 Cal.3d 374, 392-393 [216 Cal.Rptr. 733, 703 P.2d 73]; *Symington* v. *City of Albany* (1971) 5 Cal.3d 23, 33 [95 Cal.Rptr. 206, 485 P.2d 270]), we believe the board should have brought any uncertainty in the application to plaintiff's attention.

Moreover, we believe that plaintiff should be permitted, at such hearing, to introduce evidence relating to the question of when his knee injury became permanently disabling. Although we need not, and do not, now determine whether the city's or plaintiff's interpretation of section 24.0501 is correct, we think it is sensible to have all of the potentially relevant factual disputes aired at such a hearing, because the legal controversy over the interpretation of the ordinance may become moot if it turns out that plaintiff's permanent disability, as well as his knee injury, predated his membership in the retirement system.

The judgment of the Court of Appeal is reversed. The Court of Appeal is directed to reverse the judgment of the trial court and to direct that court to issue a writ of mandate compelling defendants (1) to vacate their decision denying plaintiff's application for disability retirement and (2) to afford him a hearing on such application.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kaufman, J., concurred.