[Civ. No. 44413. Second Dist., Div. Three. Jan. 30, 1975.]

GLENN LYONS, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
CITY OF LOS ANGELES, Respondents.

## COUNSEL

Geffner & Satzman, Robert Goldstein and Barry Satzman for Petitioner.

Burt Pines, City Attorney, Robert Thompson, Assistant City Attorney, and H. John Wittorff, Deputy City Attorney, for Respondents.

## OPINION

**FORD, P. J.**—Petitioner sought a writ for the purpose of having this court review the opinion and decision after reconsideration of the Workmen's Compensation Appeals Board of the State of California (hereafter the board). The writ was granted and we review herein the record of those proceedings.

Petitioner Glenn Lyons filed a workmen's compensation claim alleging injury to his back arising out of and in the course of his employment as a firefighter for the City of Los Angeles (hereafter the city). The injury was alleged to have occurred on June 8, 1966. The city filed its answer, denying all liability and alleging as affirmative defenses "credit for money paid" and the statute of limitations.

Hearing was had with respect to petitioner's claim on July 29, 1971, before Referee David I. Lippert. Thereafter, the referee made his findings and award in favor of petitioner with respect to temporary disability indemnity and permanent disability indemnity, together with reimbursement of medical-legal costs and self-procured medical treatment as well as further medical treatment. However, the referee allowed the city credit "against temporary and permanent disability indemnity and life pension awarded to the extent payments have been or hereafter

shall be made to applicant' [petitioner] pursuant to provisions of Los Angeles City Charter Article XVIII and to the extent that temporary and permanent disability indemnity and life pension have been paid to applicant [petitioner] prior to payments made to him pursuant to Los Angeles City Charter Article XVIII."

Petitioner filed a petition for reconsideration, which was granted. Thereafter, the board rendered its opinion and decision after reconsideration, adopting and affirming the referee's findings and award.

The issue presented herein is whether the board properly concluded that the city was entitled to a full credit against an award of workmen's compensation on account of disability pension payments made and to be made to petitioner.

The referee's findings of fact adopted and affirmed by the board, as herein pertinent, are as follows:[1] 1. "Glenn E. Lyons, born April 2, 1930, while employed on June 8, 1966, as a firefighter at Los Angeles, California, by the City of Los Angeles, legally uninsured, sustained an injury arising out of and occurring in the course of the employment, to his back. . . ." 2. "Applicant has been adequately compensated for all periods of temporary disability through May 31, 1969. Applicant is entitled to additional temporary total disability indemnity for the period June 1, 1969 through May 6, 1971, at the rate of $70.00 per week." 3. "This injury caused permanent disability of 81%, equivalent to 324 weeks at $52.50 per week, in the total sum of $17,010.00, and thereafter a life pension payable at the rate of $25.44 per week." 4. "On account of payments heretofore made to applicant by defendant pursuant to provisions of Los Angeles City Charter Article XVIII and to the extent such payments are hereafter made to applicant, the defendant is entitled to credit against its obligation to pay temporary and permanent disability indemnity and life pension under the Labor Code. Therefore there are no funds due and payable to applicant as of the date hereof." 5. "Disability herein was wholly caused by this injury. . . ." 6. "Article XVIII of the Los Angeles City Charter which includes Sections 190.01 et seq. was effective January 1, 1967." 7. "The applicant effectively became covered by Article XVIII as of December 21, 1967." 8. "Prior to December 21, 1967, the applicant was a member of the Pension System under Article XVII of the Los Angeles City Charter which includes Sections 180 et seq." 9. "Applicant received payments of $52.50 per week as permanent disability indemnity for the period June 1, 1969 through

---

[1]Findings of fact have been renumbered herein.

June 30, 1969 by separate checks." 10. "A disability pension was granted to the applicant on or about May 7, 1969, effective retroactively to December 29, 1968; that for the period December 29, 1968 through January 13, 1970, applicant was paid a 65 percent pension, equivalent to $562.85 per month; that for the period January 14, 1970 through October 6, 1970, applicant was paid a 70 percent pension, equivalent to $605.85 per month; and that for the period October 7, 1970 to the present date, applicant has been paid a 65 percent pension, equivalent to $562.85 per month." 11. "In connection with the payments of the 65 percent pension and the 70 percent pension for the periods above-stated, the City of Los Angeles reduced the pension amounts by amounts equivalent to temporary disability compensation at $70.00 per week for the period above-indicated and by the amounts of permanent disability compensation of $52.50 per week for the period above-indicated, so that the net result was that applicant received a total sum of $562.85 per month for the period December 29, 1968 through June 30, 1969." 12. "Applicant performed no services for the City of Los Angeles subsequent to June 8, 1966." 13. "Applicant was granted a pension by defendant pursuant to Charter Article XVIII, Section 190.12, and payments of such pension have been made from funds designated for such by Charter Article XVIII."

Petitioner contends that the city, in accordance with the formula enunciated in *City of Los Angeles* v. *Industrial Acc. Com. (Fraide)*, 63 Cal.2d 242 [46 Cal.Rptr. 97, 404 P.2d 801], was entitled to no more than a partial credit against its workmen's compensation liability for pension payments paid and to be paid to petitioner. In the *Fraide* case the Supreme Court had before it the pension system for city firemen and policemen established by article XVII of the Charter of the City of Los Angeles. Under article XVII, as it existed at the time of the *Fraide* case, service, disability and widows' pensions were paid out of the "City of Los Angeles Fire and Police Pension Fund," which fund was made up in part of contributions amounting to 6 percent of member policemen's and firemen's salaries. Taxes provided the remaining source of money for the fund. Fraide, who had become permanently disabled as a result of a gunshot wound suffered while on duty as a Los Angeles city policeman, had received a disability pension from the Fire and Police Pension Fund since February 1948. In February 1963 Fraide applied for benefits under the workmen's compensation law. The Industrial Accident Commission granted benefits but refused to allow the city any credit against its workmen's compensation liability for the disability pension it had been paying to Fraide. The city sought review of the commission's order. The

Supreme Court noted that Labor Code section 3751[2] forbids an employer from directly or indirectly making deductions from an employee's earnings to cover the whole or any part of workmen's compensation benefits. Under article XVII of the charter, disability pensions were paid from a fund comprised of both deductions from employee salaries and tax moneys. The Supreme Court stated (63 Cal.2d at p. 249): "No charter section provides for earmarking or segregating these two kinds of contributions. Although the city contends that in paying disability pensions from this fund it does not use a single dollar that comes from deductions from employees' salaries, the city fails to show that as a matter of practice or as an accounting procedure it did not use employee contributions. Indeed the Industrial Accident Commission found that the city so utilized the deductions."

While it was true that under article XVII part of the disability pension was paid with employee contributions, the court acknowledged the fact that the city had made substantial contributions to the pension fund as well, and expressed its concern that the employee not be afforded "double recovery" for an industrial injury. The Supreme Court found a solution to this problem by allowing the city a partial credit against workmen's compensation liability. The Supreme Court stated (63 Cal.2d at p. 253): ". . . the difficulty dissolves upon the realization that *to the extent* that the employee receives workmen's compensation benefits which consist of employee deductions he does not obtain 'double recovery.' Viewed in this light the proper method becomes clear. We must regard each dollar which is paid out of the pension fund as consisting in part of tax monies and in part of employee contributions. [¶] The city, therefore, should receive a partial credit against workmen's compensation liability for the disability pension it pays each employee. The credit should bear the same ratio to workmen's compensation liability as the 'city's contributions' bears to the 'total contributions.' For example, if monthly workmen's compensation liability to an employee is $120 and the ratio of 'city's contributions' to 'total contributions' is 3:4, then the city is entitled to a credit of $90. [Fn. omitted.]" (See *City of Los Angeles* v. *Industrial Acc. Com. (Morse)*, 63 Cal.2d 263 [46 Cal.Rptr. 110, 404 P.2d 814]; *Healy* v. *Industrial Acc. Com.*, 41 Cal.2d 118, 122 [258 P.2d 1].)

More recently, in *Symington* v. *City of Albany*, 5 Cal.3d 23 [95

---

[2]Labor Code section 3751 provides as follows: "No employer shall exact or receive from any employee any contribution, or make or take any deduction from the earnings of any employee, either directly or indirectly, to cover the whole or any part of the cost of compensation under this division. Violation of this section is a misdemeanor."

Cal.Rptr. 206, 485 P.2d 270], the Supreme Court held that the City of Albany could not reduce a fireman's "service connected pension" by the entire amount of a later award of workmen's compensation benefits-and that the *Fraide* formula was applicable. In *Symington,* as in *Fraide,* the pension fund consisted of both contributions or deductions from employee salaries and city tax funds. In *Symington,* the pension fund constituted a separate trust account set apart from the city's general fund. However, the court held this distinction did not permit circumvention of the *Fraide* rule, stating (5 Cal.3d at pp. 29-30): ". . . although in the present case the City of Albany's pension fund reposes in a trust account separate from the city's general fund, this 'rather metaphysical' distinction does not support a different result. (See *City of Los Angeles* v. *Industrial Acc. Com. (Fraide), supra,* 63 Cal.2d 242, 246.) [Fn. omitted.]"

In enunciating its rationale, the court in *Symington* stated (5 Cal.3d at p. 30): "As a practical matter, the city in the present case seeks the same result that Los Angeles sought in *Fraide,* that is, to reduce the employee's effective return on his contributions to the city pension fund solely because he was awarded workmen's compensation, and hence, 'directly or indirectly' to charge him for workmen's compensation. By attempting to credit pension payments which result in part from employee contributions against workmen's compensation liability, as in *Fraide, Morse,* and *Healy,* or by attempting to reduce pension payments on account of workmen's compensation benefits, as in *Cavoretto* [v. *City of Richmond,* 270 Cal.App.2d 726 (76 Cal.Rptr. 94)] and the instant case, the employer seeks to reduce the ultimate value of the employee's contributions to the pension fund."

Petitioner in the instant case commenced his employment as a fireman with the City of Los Angeles on September 23, 1957. He was injured on June 8, 1966. Prior to December 21, 1967, petitioner was a member of the pension system under article XVII of the Los Angeles City Charter, the same pension system with which the Supreme Court was concerned in *Fraide.*[3] As of December 21, 1967, petitioner became a member of the pension system under article XVIII of the Los Angeles City Charter, after "freely and voluntarily" having made a request to become a member of the new pension system under that article. A disability pension was granted to petitioner on or about May 7, 1969, effective

---

[3]Article XVII was revised several times. As amended, the article XVII pension plan provides for separate funds in much the same manner as does the article XVIII pension plan which is described in detail *infra.*

retroactively to December 29, 1968, at which time he was a member of the new pension system under article XVIII.[4]

Section 190.06 of article XVIII creates and establishes "[t]wo entirely separate and distinct funds" for the payment of pension benefits. One of the funds is called the "New System Service Pension Fund" (hereafter Service Fund) and the other is called the "New System General Pension Fund" (hereafter General Fund). Section 190.06 provides that the Service Fund shall consist of: (1) deductions from members' salaries as provided for in section 190.10; (2) contributions and donations; (3) fines levied against members; (4) proceeds from sales of unclaimed property; and (5) interest, earnings and profits from investment of such moneys. That section further provides·that the General Fund shall consist of: (1) all receipts from taxes levied pursuant to section 190.09; (2) all moneys appropriated to the fund by the city council; and (3) interest, earnings and profits from investment of such moneys.

Section 190.06 provides that moneys from the Service Fund is to be used "exclusively for the payment of service pensions granted pursuant to Section 190.11." Moneys from the General Fund "shall be used, other than for the investment thereof and except as hereinafter in this immediate paragraph specifically provided, exclusively for the payment of all pensions other than service pensions and of all administrative expenses of the New System [as created by article XVIII] and of the Fire and Police Pension System provided by Article XVII of this Charter."

Should the moneys in the Service Fund be insufficient to pay service pension benefits, section 190.06 authorizes the transfer of funds from the General Fund to the Service Fund, but provides that "[i]n no other event shall any of the moneys in either of said funds be commingled with any of the moneys in the other of said funds, whether as moneys or cash on deposit or as moneys invested." It is provided further that in case of an insufficiency of moneys in either the Fire and Police Service Pension Fund or in the Fire and Police General Pension Fund (created and established by article XVII of the charter) the board is authorized to transfer sufficient moneys to either of said funds from the General Fund.

Finally, section 190.06 provides: "Neither the . . . [Service Fund] nor the . . . [General Fund] shall be a trust fund for any purpose, and the

---

[4]Article XVIII of the Los Angeles City Charter became effective January 26, 1967, approximately eight months after petitioner's injury occurred and approximately one year prior to the effective date of petitioner's pension.

obligations to pay benefits pursuant to this Article shall be general obligations of the City."

The manner in which the new pension system is funded under article XVIII is different from the manner in which the article XVII pension system was funded at the time it was reviewed in *Fraide*. As pointed out hereinabove, under article XVII as of the time pertinent in the *Fraide* case all pensions, including service and disability pensions, were paid out of one fund which consisted of employee contributions as well as tax moneys. Although in *Fraide* the city argued that it was originally intended that deductions from members' salaries be used to pay service pensions, and that a charter provision provided that the city levy a tax in an amount equal to "estimated disability pensions," the court pointed out that no provision of the charter "required that disability pensions be paid out of tax dollars." The Supreme Court stated (63 Cal.2d at p. 254): "Here the city has chosen a questionable method of handling the employees' contributions. Here the city itself has commingled the employee contributions with tax monies in a fund from which disability pensions are paid. Surely the city cannot insist that the employees' contributions be ignored. Thus, we cannot allow the city a total credit against workmen's compensation pursuant to its charter. On the other hand, we cannot overlook the fact that the city's tax monies constitute an important source for the pension fund. To permit the city a partial credit against workmen's compensation is to dispose of the case upon the basis of the exact equities of the contending parties."

Under article XVIII the city has created two separate funds, one funded by deductions from employees' salaries and other miscellaneous sources, the other funded by tax moneys. The Service Fund, which is the only fund containing deductions from members' salaries under article XVIII, is to be used "exclusively" for service pensions. The effect of the funding provisions of section 190.06, article XVIII, is to provide a pension system under which disability pensions can only be paid with tax moneys.

■ Of course, the city's right to credit pension payments against its workmen's compensation liability depends upon the existence of an express provision allowing such credit in its charter, which constitutes a part of the contract of employment. Thus, in *Symington* v. *City of Albany, supra*, 5 Cal.3d 23, at page 33, the Supreme Court stated: "In any event, in order to take even a partial credit the city must put the employee on notice by means of the contract of employment or charter

that his pension payments will not be independent of his workmen's compensation benefits for permanent disability. Neither the city nor the Workmen's Compensation Appeals Board could allow any credit if the contract of employment fails so to provide. [Citations.]" In the instant case such notice is found in section 190.15 of article XVIII, wherein it is stated as follows: "If, pursuant to general law, an award of compensation shall be made or compensation shall be paid on account of injury, sickness or death caused by or arising out of employment as a Department Member then, and in that event, the total amount of any pension granted pursuant to this Article shall be deemed to be, and shall be, reduced by the total amount of the compensation so awarded or so paid and the amount remaining after such reduction therefrom shall be deemed to be, and shall be, the pension so granted; provided, however, that any pension granted pursuant to Section 190.11 [service pensions] shall not be reduced by any compensation which shall be awarded or paid, nor shall any pension be reduced by any compensation which shall be awarded or paid to any Retired Member retired pursuant to Section 190.11 or to any System Member who shall die while eligible to retirement pursuant to said section. In the event that any such award shall be made or compensation shall be paid, any installment payments which shall be made pursuant to this Article shall be deemed to be, and shall be, payments of such award or compensation and shall be applied to the payment of any such award or compensation and any portion of the installment payments which shall not be so applied shall be deemed to be, and shall be, payments of the pension so granted. Pension installment payments shall be made only to the extent that the cumulative sum of the installment payments of pension provided for in this Article and accrued and paid shall exceed the cumulative sum of the award of compensation paid. No deductions which shall be made from the salary of any System Member and deposited to the credit of the New System Service Pension Fund shall cover, directly or indirectly, the cost of any compensation but shall be applied only to the cost of pensions which shall be granted pursuant to Section 190.11."

As was said in *City of Oakland* v. *Workmen's Comp. App. Bd.,* 259 Cal.App.2d 163, at page 166 [66 Cal.Rptr. 283]: "Such a charter provision preventing an employee's 'double recovery' of indemnity for an industrial disability is legally proper. It has been repeatedly held that a city may protect itself against paying twice (through the workmen's compensation provisions of the Labor Code and its own retirement system) for the same industrial disability. (See *City of Los Angeles* v. *Industrial Acc. Com. (Fraide),* 63 Cal.2d 242 [46 Cal.Rptr. 97, 404 P.2d

801]; *Stafford* v. *Los Angeles etc. Retirement Board,* 42 Cal.2d 795 [270 P.2d 12]; *Lyons* v. *Hoover,* 41 Cal.2d 145 [258 P.2d 4]; *Healy* v. *Industrial Acc. Com., supra,* 41 Cal.2d 118.)" (See *City etc. of S. F.* v. *Workmen's Comp. App. Bd.,* 267 Cal.App.2d 771, 774 [73 Cal.Rptr. 429].)

In *City of Oakland* v. *Workmen's Comp. App. Bd., supra,* 259 Cal.App.2d 163, a City of Oakland fireman was retired on a service-incurred disability pension in 1952 and his pension was paid until his death in 1964. Thereafter, a death allowance was paid to his widow. In 1965 the widow sought permanent disability indemnity for her husband's industrial injury. The City of Oakland admitted the industrial injury and disability, but claimed credit against its workmen's compensation liability for the disability retirement allowances paid to the fireman during his lifetime. In discussing the effect of the *Fraide* decision, the appellate court ruled that it was inapplicable to the pension system set up by Oakland, stating as follows (259 Cal.App.2d at pp. 169-170): "The City of Oakland contends that the respective retirement fund contributions of the city and its employees are not commingled as in *Fraide.* This appears to be the case. Under section 252(4) of the City of Oakland's charter a percentage is deducted from each member's salary. This deduction is then 'credited forthwith to the individual account of the member.' Upon retirement the total of these contributions is applied to *'provide part of the retirement allowance granted . . .* on account of said member.' (Italics added.) This 'part' has been referred to by the parties in the proceedings below as the 'annuity portion.' The City of Oakland makes no contribution until the member retires. Thereafter the city is required to contribute each year such amount as is necessary, when added to the member's contributions, to provide the full retirement benefit payable during that year. This part is called the 'pension portion.' The total of the 'pension portion' paid during Reimers' lifetime by the City of Oakland was $56,459. [¶] The City of Oakland, unlike the City of Los Angeles in *Fraide,* has established both as a matter of practice and as an accounting procedure that no part of the 'pension portion' it seeks to offset against the compensation award was contributed by Reimers. [¶] Accordingly we hold that the formula announced in *Fraide* is inapplicable to the case before us."

Thus, where deductions from employees' salaries are not commingled with contributions by the city to pension funds and where the city only seeks a credit against its workmen's compensation liability with respect to its own contributions to a disability pension, the *Fraide* formula is inapplicable.

In *Lyons* v. *Hoover*, 41 Cal.2d 145 [258 P.2d 4], the City of Sacramento contributed to the retirement system for firemen and the city charter provided that workmen's compensation payments shall be a deductible credit "against that part of the pension allowance which is provided by contributions of the city." The court stated (41 Cal.2d at pp. 148-149): "It is clear that if a widow receives all of a compensation award, *the portion of her pension allowances provided by the city's contributions* can be reduced until the sums withheld equal the total amount of the award.\*" (Italics added.) The footnote states as follows: "\*Inasmuch as the deductions are to be made from the portion of the pension allowance which is provided by contributions of the city, there is no claim that such deductions could result in charging the employee with part of the cost of workmen's compensation in violation of section 3751 of the Labor Code. (See *Healy* v. *Industrial Acc. Com., ante,* p. 118 [258 P.2d 1].)"

In *Gallagher* v. *City and County of San Francisco,* 33 Cal.Comp. Cases 145, the Workmen's Compensation Appeals Board ruled that the *Fraide* formula was inapplicable to the City of San Francisco's pension system because under that system employees' contributions to the pension fund could never be used to satisfy the city's workmen's compensation liability. The board stated (33 Cal.Comp. Cases at p. 153): "As has been shown, the employees' deductions, i.e., contributions to the pension fund, *are* carefully 'earmarked and segregated'—kept in separate accounts. The city's retirement law does not provide for credit for the entire pension allowance, but only to the extent of the city's contributions. The extent of the City's contributions to each pension payment has been carefully computed in each case on an actuarial basis. As stated, the employee has produced no evidence, nor does he argue, that this computation is in any way incorrect or unfair. Accordingly, in answer to the Court's ultimate question in the *Fraide* case, no part of the employee's earnings in these cases goes to pay the city's workmen's compensation liability. [¶] The court in the *Fraide* case emphasized that the city could not establish that employee contributions to the retirement fund were not in fact to a certain extent used by the city to pay its workmen's compensation liability to disabled employees (*Id.* at p. 250-251). [¶] In this case, by law, by accounting procedures and by practice, none of these employees' contributions could ever be used to satisfy the city's workmen's compensation liability. Each employee has a vested interest in his contributions which ultimately he will receive either by way of refund if he leaves city employment, by disability pension if he becomes disabled, or by retirement pension when he qualifies. No part of *his* contributions satisfies workmen's compensation since the city

neither claims credit, nor is it entitled to credit under its ordinances, for the employee's contributions." (See *Van Pelt* v. *City and County of San Francisco,* 33 Cal.Comp. Cases 138, 143.)

Under article XVIII, section 190.06, deductions from employees' salaries become part of the Service Fund, which fund can only be used to pay service pensions. All other pensions, including disability pensions, are paid out of the General Fund consisting primarily of tax moneys. Under section 190.15 all pensions, *except service pensions,* which under section 190.06 are partially funded by employee contributions, are reduced by an award of compensation so as to avoid the possibility of double recovery by an employee for an industrial injury. Section 190.15 provides: "No deductions which shall be made from the salary of any System Member and deposited to the credit of the . . . [Service Fund] shall cover, directly or indirectly, the cost of any compensation but shall be applied only to the cost of pensions which shall be granted pursuant to Section 190.11." Thus, under section 190.15 an employee can collect a full service pension, funded in part by his own contributions, and workmen's compensation benefits. But, to the extent that it results in double recovery, he may not collect a disability pension funded solely by city contributions and also workmen's compensation benefits.

Accordingly, the *Fraide* formula is inapposite in this case since under article XVIII, section 190.06, the disability pension paid to petitioner was paid from the General Fund which consisted solely of city contributions. However, petitioner argues that the city has failed to meet its burden of proof with respect to those "facts which would entitle it to a total credit." Petitioner states: "*First,* no evidence was introduced to show an *absence* of comingling [*sic*] or that petitioner's contributions were *not* used to defray the cost of his workmen's compensation benefits." However, article XVIII specifically provides that an employee's contributions shall not be used to defray the cost of his workmen's compensation benefits. As will be hereinafter noted, with respect to this argument and arguments of a similar nature subsequently considered, in the absence of evidence to the contrary the presumption that official duty has been regularly performed is applicable. (Evid. Code, § 664.)

Next, petitioner states that the city "offered no evidence whatsoever with respect to what happened to the money which Petitioner contributed to the Article XVII pension fund during the first ten years of his employment." In article XVII, as amended in 1969, section 186 provided for the establishment of two separate funds, one of which, "The Fire and

Police Service Pension Fund," was to be used "exclusively for the payment of service pensions." This fund was to consist of contributions from members' salaries pursuant to section 186½ and "[a]ll moneys which shall be on deposit to the credit of the Service Pension Account of the formerly provided Fire and Police Pension Fund as of the effective date of this section . . . ." Thus, it is provided in article XVII that salary contributions made to the article XVII pension plan are part of the Fire and Police Service Pension Fund, a fund used exclusively for the payment of service pensions under article XVII.

Petitioner contends: ". . . no evidence was introduced to show that pensions under Article XVII still exist. And, if they do exist, what type of pensions are paid out of it now, and on what basis?" However, article XVII provides for a pension system separate from that for which provision is made in article XVIII.

Petitioner contends that "no evidence was introduced with respect to the source of funding for the new Article XVIII pension system." However, article XVIII, section 190.06, clearly provides for the manner in which the two separate funds created therein shall be funded.

Petitioner contends: ". . . no evidence was introduced to show whether or not any contributions were made under Article XVIII into the new pension system on Petitioner's behalf. If no contributions were made pursuant to Article XVIII, since Petitioner's date of injury was *before* the effective date of the new pension system, it is clear that Petitioner's entire pension comes into being because of his years of employment and contribution into the comingled [*sic*] funds pursuant to Article XVII, which mandates the conclusion that *Fraide* applies." As has been noted, article XVII was amended to create two separate pension funds similar to the funds created under article XVIII and former contributions from employees' salaries were placed in the fund designated to exclusively provide for service pensions. As of the effective date of the amendment, January 26, 1967, petitioner's contributions to the former article XVII pension fund were not commingled with funds used to pay for pensions other than service pensions. Further, to the extent that petitioner's contentions suggest that the city should have put on evidence tracing actual dollar amounts with respect to contributions deducted from petitioner's salary and funds used to pay petitioner's pension, we note that in *Fraide, supra,* the Supreme Court stated (63 Cal.2d at p. 250): "We recognize that the city correctly states that it need not 'show that specific dollar bills were delivered to pay any specific obligation'; the

trust fund with which we deal here is not a bucket of dollar bills; it is a legal and accounting concept."

The pertinent charter provisions are clear as to the particular source to which recourse is to be had for the funding of each kind of pension designated therein. In the absence of evidence to the contrary, it must be presumed that official duty has been regularly performed and that the various provisions of articles XVII and XVIII have been carried out. (Evid. Code, § 664; *Bringle* v. *Board of Supervisors,* 54 Cal.2d 86, 89 [4 Cal.Rptr. 493, 351 P.2d 765]; *Gee* v. *California State Personnel Bd.,* 5 Cal.App.3d 713, 718 [85 Cal.Rptr. 762]; *Griffith* v. *City of Los Angeles,* 175 Cal.App.2d 331, 339 [346 P.2d 49].)

Petitioner contends that the decision of the appeals board contravenes his vested rights. He argues: "Your Petitioner worked from his date of hire through the date of injury under the *Fraide* pension system. Petitioner submits that for individuals who were injured at a time when they were covered by the pension system which was considered by the court in *Fraide,* that the '*Fraide* doctrine' must be applied. Therefore, the Appeals Board should have only allowed the City a *partial* credit in accordance with the formula enunciated by the court in *Fraide* and it was error to allow a *total* credit."

While it is true that petitioner had a vested right in the pension system in the sense that he could immediately enforce the provision for pension benefits in his employment contract if all the conditions of the contract had been fulfilled, still petitioner did not have a vested right to a double recovery of disability pension and workmen's compensation benefits. Petitioner voluntarily elected to become a member of the new pension system under article XVIII. And it remains a fact that the disability pension granted to petitioner herein was granted pursuant to section 190.12(a) of said article. Under the charter, pension payments with respect to section 190.12(a) pensions are made out of the General Fund, which consists solely of city contributions. The *Fraide* formula is applicable only when an employer uses funds which consist in part of contributions from employees' salaries to defray the cost of either disability pension or workmen's compensation benefits.

Petitioner contends further that the purpose of the 6 percent pension deduction from his salary was to purchase either a years in-service pension, a service-connected disability pension, or a nonservice-connected disability pension. Thus, it is contended that "in absence of a return

to him of his pension contributions," petitioner had a vested right to pension benefits as well as workmen's compensation benefits. However, as was said in *City etc. of San Francisco* v. *Workmen's Comp. App. Bd. (Quinn)*, 2 Cal.3d 1001, at page 1010 [88 Cal.Rptr. 371, 472 P.2d 459]: "Payments of workmen's compensation and of retirement benefits are based upon entirely different principles. The former is compulsory under state law; the latter is voluntary and is subject to contractual arrangement between the employer and employee."

In the instant case, petitioner did not choose to enforce his contract rights under article XVII. Instead, he voluntarily entered into a new contract with his employer whereby he became a member of the new pension system under charter article XVIII and gave up any rights he had in the pension system under article XVII. The pension provisions of charter article XVIII constitute part of the contract of employment between petitioner and the City of Los Angeles. (*City etc. of S.F.* v. *Workmen's Comp. App. Bd., supra,* 267 Cal.App.2d 771, 773; *City of Oakland* v. *Workmen's Comp. App. Bd., supra,* 259 Cal.App.2d 163, 166.)

With respect to deductions from members' salaries, section 190.10 of article XVIII provides in pertinent part as follows: "Each System Member shall be deemed to consent and agree to each deduction . . . and the payment of each payroll check . . . shall be a full and complete discharge . . . of all claims and demands whatsoever for the services rendered by such System Member during the period covered by each such payroll check except such claims as such System Member may have to the benefits provided by this Article, and no System Member . . . ever shall be entitled, for any cause or reason whatsoever, to be paid any of the moneys which shall be deducted from his salary as hereinabove provided."

In *Grace* v. *City of Los Angeles,* 249 Cal.App.2d 577 [58 Cal.Rptr. 388], this court explored the contention of an ex-police officer for the City of Los Angeles that he was entitled to have returned to him, upon the cessation of his employment, the deductions from his salary payable into the pension system pursuant to article XVII. In affirming the judgment for declaratory relief denying Grace's claim, this court quoted as follows from *Goodwin* v. *Board of Trustees,* 72 Cal.App.2d 445, 450-451 [164 P.2d 512] (249 Cal.App.2d at pp. 583-584): " 'Nor is it correct to say that during the period 1933-1943 the firemen received nothing for their deductions unless they retired. The plan set up by the charter did not only provide for retirement based upon age and years of service. In addition it provided for retirement, regardless of age and years of

service, for a fireman disabled in the course of his employment. It also called for pensions for the families of firemen if the firemen were killed in the service. To this extent the plan called for a limited type of protection in the nature of accident insurance. The deductions made each month were paid, therefore, not only towards an ultimate annuity to be paid upon reaching the age of retirement, but also for this accident insurance. As long as there was no provision in the charter for a refund of these funds in the event of voluntary resignation before reaching retirement age, it must be held that under the type of plan here involved the deductions were in the nature of premiums for the types of protection above outlined. This being so there was no legal or equitable, express or implied, obligation until May 4, 1943 [effective date of a charter amendment allowing refund of pension deductions], on the part of the city to refund these sums if the employee voluntarily resigned. No other conclusion is permissible. The moneys paid into the fund were not trust funds belonging to the firemen, but public moneys of the city. It should be here noted that the five percent deduction made from a fireman's salary was obviously insufficient alone to support the pension plan. Under the plan a fireman could retire at 55 after 20 years of service. [Fn. omitted.] During that period he would pay into the fund the equivalent of one year's salary. This would pay him half salary for but two years. Obviously, at 55, his life expectancy is much longer. Thus it is clear that, as accident insurance plus the possibility of a future annuity, firemen received a *quid pro quo* for their deductions.' "

Finally, petitioner contends: "The referee found in his Award that your Petitioner was entitled to accrued temporary disability of $7,050.00, payable forthwith, as well as permanent disability at the rate of $52.50 per week, beginning May 14, 1971. Therefore, as of the date of the Award on May 2, 1973, there was approximately $12,000.00 due to your Petitioner in a lump sum. [¶] Even if the City of Los Angeles is entitled to a total credit, which your Petitioner disputes, that credit can only operate prospectively. Of the approximately $12,000.00 due your Petitioner in May, 1973, the City of Los Angeles is only paying a pension in the sum of $605.85 during that month. Therefore, even if the City of Los Angeles is to be given a total credit, the $605.85 should be deducted from the total lump sum accrued as of May, 1973, and the balance should be ordered paid over to your Petitioner. Any credits subsequent to that time can be taken prospectively."

However, as petitioner with commendable candor concedes, the court in *City etc. of S.F.* v. *Workmen's Comp. App. Bd., supra,* 267 Cal.App.2d

771, decided to the contrary. The court stated (267 Cal.App.2d at pp. 780-781): "From the foregoing authorities it will be seen that under appropriate charter provisions a municipality has broad power to prevent double disability payments to the same person. The order in which the respective payments, awards or allowances are payable is immaterial. Pension payments may be reduced and offset against an earlier and fully paid compensation award. (*City of Los Angeles* v. *Industrial Acc. Com. (Morse), supra,* 63 Cal.2d 263; *Stafford* v. *Los Angeles etc. Retirement Board, supra,* 42 Cal.2d 795 [270 P.2d 12].) Earlier pension payments may be credited against a later compensation award. (*City of Oakland* v. *Workmen's Comp. App. Bd. (Reimers), supra,* 259 Cal.App.2d 163.) And where award and pension are payable concurrently one may be offset or credited against the other to the end that total payments shall not exceed the stipulated monthly pension. (*City of Los Angeles* v. *Industrial Acc. Com. (Fraide), supra,* 63 Cal.2d 242; *Lyons* v. *Hoover, supra,* 41 Cal.2d 145; *Healy* v. *Industrial Acc. Com., supra,* 41 Cal.2d 118; *Barnett* v. *Brizee, supra,* 258 Cal.App.2d 97 [65 Cal.Rptr. 493].) This flexible right to take credit was made clear in *City of Los Angeles* v. *Industrial Acc. Com. (Morse), supra,* 63 Cal.2d 263, 264, where the court stated, 'The city, therefore, may be entitled to a credit on future compensation liability or may be entitled to reduce future pensions. . . .' " The court also stated (267 Cal.App.2d at pp. 784-785): "San Francisco could properly, by charter provision or ordinance, have required full credit against its disability retirement allowances for payments made on workmen's compensation awards for the same disability. *So long as the allowance and award were for the same disability it would be immaterial that one had accrued or was payable, or was paid, prior to the other.* Such credit would be permissible even though it resulted in no monthly payments being made to the retired employee until the exhaustion of the credit; it was expressly so held in *Stafford* v. *Los Angeles etc. Retirement Board, supra,* 42 Cal.2d 795."

The award of the Workmen's Compensation Appeals Board is affirmed.

Allport, J., and Potter, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied March 26, 1975.