[Civ. No. 69065. Second Dist., Div. Five. Aug. 29, 1984.]

In re the Marriage of EDNA CLARE and
CLARSON RENE CORRIVEAU.
EDNA CLARE CORRIVEAU, Respondent, v.
CLARSON RENE CORRIVEAU, Appellant.

**COUNSEL**

Bruce P. Wolfe for Appellant.

Michael H. Ehrlich for Respondent.

**OPINION**

**HASTINGS, J.–** In this opinion we must determine if workers' compensation benefits paid to a husband and required to be repaid from his disability retirement benefits are deductible from the community property portion of these benefits that was divided between husband and wife in a dissolution action.

Appellant Clarson Rene Corriveau (husband) and respondent Edna Clare Corriveau (wife) were divorced in 1978. Wife was awarded her community

property interest in husband's longevity retirement plan with the City of Los Angeles Fire and Police Pension System. (Husband was a Los Angeles Police Officer.) Wife's community property share of husband's pension was ultimately determined to be 42.5 percent.

Husband later suffered a work-related disability and in 1982 elected to take a disability retirement (as opposed to the longevity retirement). By taking a disability retirement, husband was entitled to a larger monthly benefit, determined by the court to be no more than 3 percent higher than the longevity retirement benefit. This excess amount was adjudged to be husband's separate property but the rest of the monthly benefit remained community property. (*In re Marriage of Stenquist* (1978) 21 Cal.3d 779, 787-788 [148 Cal.Rptr. 9, 582 P.2d 96]; *In re Marriage of Mueller* (1977) 70 Cal.App.3d 66, 71 [137 Cal.Rptr. 129].) The fire and police pension system was ordered to pay directly to wife 42.5 percent of husband's disability retirement benefits. This order was made in June 1982, after an order to show cause hearing re modification.

As it turned out, husband had received $8,975 in workers' compensation benefits during the first nine months of 1982. He continues to receive workers' compensation benefits of $10 per day until August 1, 1990, at which time he will receive $38.77 per week for the rest of his life. His monthly disability retirement benefit is reduced by a certain amount each month to reimburse the workers' compensation fund for the $8,975[1] and is further reduced by the amount that husband is currently receiving from workers' compensation.[2]

On October 27, 1982, wife obtained a temporary restraining order to keep the pension fund from paying any portion of husband's workers' compensation lien from her portion of the pension. After an order to show cause hearing on November 18, 1982, the court ruled that the deductions made in husband's monthly pension benefits by virtue of workers' compensation payments should be applied against husband's share only. Mr. Ramon Mejia, the chief accounting employee for the fire and police pension system, testified at this hearing that reimbursement is required only from disability pensions and not from normal service-related longevity pensions. Husband appeals from the court's order.

Husband's argument is that he is being penalized in a grossly unfair manner simply because he chose a disability pension rather than the longevity

---

[1] At husband's election his monthly payment check was reduced by 75 percent in order to quickly repay the $8,975. Full repayment was accomplished by February 1983.

[2] Husband is not injured by these reductions as they are offset by the workers' compensation benefits.

pension. The problem stems from the fact that the court treated the pension, except for 3 percent, as a normal longevity pension in order to preserve wife's community property interest whereas the fire and police pension system treats it all as a disability pension. The result is an unfair apportionment against him because no reimbursement is required from longevity payments but is required from disability payments. To remedy this alleged unfairness husband sought to have the court at the OSC hearing apportion the recoupment to both husband and wife evenly[3] or to order the pension board[4] to require repayment only from the 3 percent excess or to apportion the $8,975 as the court did, to wit, 97 percent longevity and 3 percent disability.

The trial court refused husband's request based on its interpretation of *In re Marriage of Stenquist, supra,* 21 Cal.3d 779. In *Stenquist,* the husband joined the army in 1944 and married in 1950. In 1953 he suffered a service-related injury leading to amputation of his left forearm for which the Army assigned him an 80 percent disability rating. Husband continued his military service until he retired in 1970. At that time he faced the choice of taking regular "retirement" pay at the rate of 65 percent of his basic pay or taking "disability" pay equal to 75 percent of his basic pay. Assuming husband desired the higher amount, the Army made "disability" payments to him.

In 1974 the parties dissolved their marriage and the court awarded wife part of his pension as community property which the Supreme Court affirmed. The opinion states, at page 786: "We cannot permit the serviceman's election of a 'disability' pension to defeat the community interest in his right to a pension based on longevity. In the first place, such a result would violate the settled principle that one spouse cannot, by invoking a condition wholly within his control, defeat the community interest of the other spouse. [Citations.] . . .

"In the second place, 'only a portion of husband's pension benefit payments, though termed "disability payments," is properly allocable to disability. It would be unjust to deprive wife of a valuable property right simply because a misleading label has been affixed to husband's pension fund benefits.' [Citations.]

". . . a 'retirement' pension . . . is computed in part on the basis of longevity of service and rank at retirement, it also serves the objective of

---

[3]Based on the recent case of *In re Marriage of Costo* (1984) 156 Cal.App.3d 781 [203 Cal.Rptr. 85], husband contended at oral argument that disability payments are not subject to community property division. *Costo,* however, dealt with an interpretation of the Uniformed Services Former Spouses' Protection Act (Pub.L. No. 97-252 of tit. 10, § 1408 U.S.C.) and must be limited to similar military pension situations. It is not applicable here.

[4]Mr. Mejia in his testimony referred to the committee that administered the pension system as the pension board.

providing support for the serviceman and his spouse after he leaves the service. . . ."

In our present case the court's order was correct as to the payments to wife and we affirm. (*In re Marriage of Stenquist, supra,* 21 Cal.3d 779.)

This case does add, however, a new dimension to the *Stenquist* issue. Husband is not objecting to the apportionment as required by *Stenquist* but is objecting to the fact that the pension board treats the *entire* pension as a disability pension whereas the court has treated it as a combination of the two pensions. The issue that was before the court, was not just a disagreement between husband and wife but was also a dispute between husband and the pension board. Husband was seeking the aid of the court to order the pension board to require repayment only from the 3 percent excess or to apportion the $8,750 repayment and the monthly continuous payments in a manner consistent with the court's apportionment of the two systems.[5]

The court refused to take evidence on this issue. The following testimony by Mr. Mejia and colloquy between the court and counsel for husband and wife demonstrates the court's misunderstanding of the problem. We begin with the cross-examination of Mr. Mejia by husband's attorney.

"Q. Is it the pensioner's election as to how much his pension is reduced by in terms of the Workers' Compensation award that is variable between 25 percent and 100 percent?

"A. No. [¶] The pensioner can notify the pension department in writing stating any financial condition that he may wish to support his case, and the amount that he possibly owes is taken into consideration, and a percentage is determined by management of the department.

". . . . . . . . . . . . . . . . . . . . . . . .

"Q. . . . Now, in Mr. Corriveau's case, the pension board considers his entire pension to be a disability pension?

"MR. EHRLICH [counsel for wife]: I'm going to object, Your Honor. It is not relevant as to what the board considers his pension to be. . . .

"THE COURT: What is the purpose?

---

[5]We take this to mean that the pension board should also have ordered only a small portion of the $8,975 repaid because the bulk of the pension payments should have been treated as longevity payments for which no reimbursement was required. As to the apportionment of the future payments, husband's position is not clear and will have to be clarified on remand.

"MR. WOLFE [counsel for husband]: The purpose is, Your Honor, since the board considers it all disability and since I think the process of questioning will show the court that they would not take anything out of his pension if it wasn't a disability pension, this court has determined that only a certain portion of it is disability, yet the pension board considers it all to be; and, therefore, they're withholding from all of it, when under the court's ruling they could only be withholding from about 3 percent of it. . . .

"THE COURT: I don't see why he is tremendously disadvantaged.

"MR. WOLFE: If you will let me make a record, I think you will see, Your Honor.

"THE COURT: The court has determined under the principles of Stenquist what the community interest is, so now, from the perspective of this case at least, we may be just talking about semantics.

"MR. WOLFE: We are really not.

"THE COURT: Is it your contention that the charter requires the board to reduce only disability pensions by the Workmen's [sic] Compensation benefits, but not any other pension? Is that it?

"MR. WOLFE: Yes. [¶] Isn't that correct, Mr. Mejia?

"THE WITNESS: Yes, it is.

". . . . . . . . . . . . . . . . . . . . . . . . .

"Q. BY MR. WOLFE: Now, the pension department at the request of the petitioner determined a breakdown as to how much of Mr. Corriveau's monthly pension payment would have been earned by him had he have elected to retire in a nondisability fashion, is that correct?

"A. I believe so, yes.

"Q. But in truth and in fact, the entire sum paid to Mr. Corriveau is carried on the pension department's book as a disability pension?

"A. Yes.

"Q. And that is paid from a different fund than a service connected pension; is that correct?

"MR. EHRLICH: I object, Your Honor. It is not relevant.

"MR. WOLFE: It is highly relevant in that the city is doing one thing and the court is doing something different, and the respondent has no choice in the matter and is, in effect, getting—

"THE COURT: The objection is sustained.

"MR. WOLFE: For the record, I would make an offer of proof that a disability pension is paid from the general fund of the City of Los Angeles and a service connected pension based on longevity is paid from the contributions of the employer and employee combined."

In our view counsel made an offer of proof that required further testimony. Unquestionably there is an element of unfairness to husband *if* apportionment between the two systems is feasible and appropriate. The problem, of course, is the head-on conflict between the court's determination that a substantial portion of the benefits are longevity related while the pension board treats all payments as disability related. We are unaware of any case that has tried to adjust the alleged inequities presented here.[6] Some form of apportionment might be possible, particularly in view of the fact that husband and wife contributed to the longevity pension fund. In *In re Marriage of Stenquist, supra,* 21 Cal.3d 779, there are portions of the opinion that suggest it would not be improper to consider a more equitable method of repayment in a situation similar to that in question. For example, the court stated at pages 786-787, "In the second place, 'only a portion of husband's pension benefit payments, though termed "disability payments," is properly allocable to disability. . . .' Because [military retired pay based on disability] replaces a 'retirement' pension, and is computed in part on the basis of longevity of service and rank at retirement, it also serves the objective of providing support for the serviceman and his spouse after he leaves the service." *Stenquist,* in other words, realized that a disability pension is also affected by longevity. Whether the pension board has made an arbitrary decision that can be equitably adjusted, or a decision mandated by appropriate law governing the administration of the pension plans, cannot be determined under the limited evidence allowed by the trial court.

In the interlocutory judgment of dissolution, the trial court retained jurisdiction over the City of Los Angeles Fire and Police Pension System as a party in order to control payments from the system consistent with its order.

---

[6] We have reviewed *Wesley* v. *Board of Pension Commissioners* (1981) 119 Cal.App.3d 471 [174 Cal.Rptr. 75] and *Myers* v. *Fire & Police Pension System* (1973) 32 Cal.App.3d 725 [108 Cal.Rptr. 429], but they involve different issues and do not directly or indirectly resolve the problem.

The court, therefore, can take further evidence that will enable it to rule one way or another on the issues raised by husband as outlined in this opinion.[7]

The judgment ordering wife's payments to be paid from husband's share of his monthly pension is affirmed. The matter is remanded for a further hearing consistent with this opinion on the issue of apportionment by the City of Los Angeles Fire and Police Pension System. Each party to bear own costs of appeal.

Stephens, Acting P. J., and Ashby, J., concurred.

---

[7]We realize there are other practical problems involved that must be considered by the trial court. For example, husband through his own election has repaid the $8,975; however, he sought help from the court before the entire sum had been repaid and should not be penalized for the court's error if a more equitable solution is possible.