[No. B016567. Second Dist., Div. One. July 29, 1986.]

In re the Marriage of EDNA CLARE and
CLARSON RENE CORRIVEAU.
EDNA CORRIVEAU, Respondent, v.
CLARSON RENE CORRIVEAU, Respondent;
BOARD OF PENSION COMMISSIONERS OF
THE CITY OF LOS ANGELES, Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B of the Discussion.

## COUNSEL

James K. Hahn, City Attorney, Siegfried O. Hillmer, Assistant City Attorney, and Eudon Ferrell, Deputy City Attorney, for Appellant.

No appearance for Respondent Wife.

Bruce P. Wolfe for Respondent Husband.

## OPINION

**EPSTEIN, J.**\*—We are asked to decide whether the right of the City of Los Angeles Board of Pension Commissioners (BPC) to set off workers'

---

*Assigned by the Chairperson of the Judicial Council.

compensation benefits paid to an employee who has retired for a service connected disability is limited to the amount, if any, by which the employee's disability pension exceeds the amount of annuity he would have received if his retirement had been based on longevity alone. We conclude that it is not so limited.

## PROCEDURAL HISTORY

This appeal arises out of a marriage dissolution proceeding that was the subject of an earlier appellate decision, *In re Marriage of Corriveau* (1984) 159 Cal.App.3d 836 [207 Cal.Rptr. 323] (*Corriveau I*).

Clarson Rene Corriveau (husband) was a police officer of the City of Los Angeles (City) and, as such, was a member of its New Pension System. In his 1978 divorce, his wife was awarded a property interest in his prospective longevity retirement pension. In accordance with the apportionment principle of *In re Marriage of Brown* (1976) 15 Cal.3d 838, 848 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164], her share was based on the ratio of the number of years her husband had been a member of the retirement system during their marriage to the total of his years of membership. That share was ultimately determined to be 42.5 percent.

Later, husband suffered a work-related disability and elected to take a disability retirement. He was also eligible to retire on the basis of longevity alone, but the disability retirement benefits were 3 percent greater than the longevity annuity. Husband had received a workers' compensation award for his injuries, and BPC sought to set off the amount of workers' compensation benefits (permanent disability and a life pension) it had paid and would pay, against the disability pension.

The trial court rejected husband's argument that the BPC setoff should be applied against both his share and his wife's share of the pension. It ruled that husband's share would have to bear the entire amount of any setoff. That decision was based on *In re Marriage of Stenquist* (1978) 21 Cal.3d 779 [148 Cal.Rptr. 9, 582 P.2d 96], and was affirmed in *Corriveau I*.

*Stenquist* held that the decision of a divorced spouse to retire for disability instead of longevity cannot diminish the other spouse's right to a community share of a longevity retirement. Otherwise, the employee spouse could "by unilateral election . . . 'transmute community property into his own separate property,'" a result antithetical to the protective philosophy of the community property law. (21 Cal.3d at p. 782.) Thus, the nonemployee spouse is entitled to receive the share of the pension that would have been paid if

the retirement had been for longevity alone. The amount, if any, by which a disability pension exceeds a longevity annuity pension belongs to retiring spouse alone, because it is based on that spouse's disability and does not diminish the community property rights of the other spouse. (21 Cal.3d at p. 787.)

Husband's claim that his wife's share of the community should be subject to part of the setoff was not his only quarrel. He also had a dispute with BPC, which had been joined as a party in the dissolution proceedings. (Civ. Code, § 4363.1.) He asked that its setoff be limited to the 3 percent by which the disability benefits exceeded longevity benefits. The trial court did not decide that issue, and prevented husband from presenting evidence on the point.

The *Corriveau I* court held that it was error to bar this evidence. It pointed out that an element of unfairness to the husband would exist "*if* apportionment between the two systems is possible and appropriate." (159 Cal.App.3d at p. 842, italics in original.) The court remanded the case for further hearing on the setoff apportionment issue.

On remand, the trial court agreed with husband, and ordered BPC to reimburse him for all funds withheld on account of its setoff in excess of the 3 percent differential. BPC appeals from that order.[1]

DISCUSSION

A. Right to Setoff

The Los Angeles City Charter recognizes several classifications of retirement pensions. These include retirement for longevity (§ 190.11); service-connected disability (§ 190.12); and a surviving spouse's pension (§ 190.13).

█ BPC bases its claim to a setoff on section 190.15.[2] That provision permits an offset for workers' compensation benefits paid against every class

---

[1] An earlier order had restricted the BPC's future right of setoff to the 3 percent differential. BPC has not appealed from that order.

[2] Section 190.15 of the City charter provides:

"Sec. 190.15. Effect of Receipt of Compensation.

"For the purposes of this section, 'compensation' is defined as every payment provided for by any general law providing benefits for injury, sickness or death caused by or arising out of employment, and also includes payments made to satisfy any claim for damages to the extent that such payments relieve of the obligation to pay compensation under any such general law. If, pursuant to general law, an award of compensation shall be made or compensation shall be paid on account of injury, sickness or death caused by or arising out of

of pension *except* longevity pensions that are awarded under section 190.11. The reason for the distinction is that, of all the recognized classes of pensions, only longevity pensions are funded by employee contributions. Labor Code section 3751 prohibits financing workers' compensation benefits from employee contributions, and a setoff against an employee-financed annuity would violate that provision. (*City of Los Angeles* v. *Industrial Acc. Com. (Fraide)* (1965) 63 Cal.2d 242.)[3]

A city is, of course, entitled to set off the amount of workers' compensation benefits paid to an employee against disability retirement due the employee, so long as its retirement law so provides and the retirement benefits are not financed by employee contributions. (*Symington* v. *City of Albany* (1971) 5 Cal.3d 23, 29 [95 Cal.Rptr. 206, 485 P.2d 270]; *Lyons* v. *Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 1007, 1014, 1016 [119 Cal.Rptr. 159].)

The language of section 190.15 is clear and unambiguous in affording BPC this right to offset. (*Myers* v. *Fire & Police Pension System* (1973) 32 Cal.App.3d 725, 729 [108 Cal.Rptr. 429].) Service connected retirement benefits under the City's present system are entirely financed by tax revenues and earnings on the City's contributions. (See § 190.06; *Lyons* v. *Workmen's Comp. Appeals Bd., supra,* 44 Cal.App.3d at p. 1014; *Wesley* v. *Board of Pension Commissioners* (1981) 119 Cal.App.3d 471, 473 [174 Cal.Rptr. 75].)

---

employment as a Department Member then, and in that event, the total amount of any pension granted pursuant to this Article shall be deemed to be, and shall be, reduced by the total amount of the compensation so awarded or so paid and the amount remaining after such reduction therefrom shall be deemed to be, and shall be, the pension so granted; provided, however, that any pension granted pursuant to Section 190.11 shall not be reduced by any compensation which shall be awarded or paid, nor shall any pension be reduced by any compensation which shall be awarded or paid to any Retired Member retired pursuant to Section 190.11 or to any System Member who shall die while eligible to retirement pursuant to said section. In the event that any such award shall be made or compensation shall be paid, any installment payments which shall be made pursuant to this Article shall be deemed to be, and shall be, payments of such award or compensation and shall be applied to the payment of any such award or compensation and any portion of the installment payments which shall not be so applied shall be deemed to be, and shall be, payments of the pension so granted. Pension installment payments shall be made only to the extent that the cumulative sum of the installment payments of pension provided for in this Article and accrued and paid shall exceed the cumulative sum of the award or compensation paid. No deductions which shall be made from the salary of any System Member and deposited to the credit of the New System Service Pension Fund shall cover, directly or indirectly, the cost of any compensation but shall be applied only to the cost of pensions which shall be granted pursuant to Section 190.11."

[3]The *Fraide* case arose out of an earlier retirement program of the City, in which retirement benefits were paid out of a fund in which employee and city contributions, and their earnings, had been commingled. *Fraide* limited the City's setoff to an amount proportionate to the City contributions to the fund.

Husband claims that he is being treated unfairly because, he argues, his pension is regarded as based on longevity for purposes of recognizing his wife's *Stenquist* rights, but is treated as based on disability for purposes of the BPC setoff. *Corriveau I* recognized some unfairness in that result, and remanded the case for determination whether an apportionment of the setoff is possible and appropriate.

The record on that issue is now fully developed. Unless we are to disregard the clear language of the City charter, an apportionment is neither possible nor appropriate. It may be that husband would have netted greater benefits if he had elected to retire for longevity rather than disability, and thereby forego the 3 percent differential in favor of foreclosing BPC's right to offset his workers' compensation benefits.[4] But the choice was his, and he chose to take a disability retirement.

More fundamentally, husband's argument mistakes an important aspect of what has occurred. His retirement *was* for disability, and BPC is entitled to treat it for what it is. His wife's right to her share of the pension is not based on a legal fiction that the retirement was for longevity. Instead, as *Stenquist* makes clear, she is entitled to an in lieu amount based on what she would have received if he had retired on the basis of longevity. That is what she received in the dissolution order.

B.  Waiver*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

CONCLUSION

The order of the trial court directing reimbursement of the amount of BPC setoff is reversed and the trial court is directed to enter a new and different order consistent with this opinion. The case is remanded for that purpose. Husband is to bear the costs on appeal.

Hanson (Thaxton), Acting P. J., and Devich, J., concurred.

The petition of respondent husband for review by the Supreme Court was denied October 15, 1986.

---

[4] We are not informed whether tax benefits from the disability alternative may justify that choice despite the offset. (See 26 U.S.C. §§ 61(a)(11), 104(a)(1); *Doogan* v. *United States* (S.D. Ohio 1957) 154 F.Supp. 703.)

*See footnote, *ante,* page 1012.